LIBERTY LOBBY, INC., Plaintiff,

v.

John REES, Sheila Louise Rees and the Information Digest, Defendants.

C.A. No. 84–3452.

United States District Court, District of Columbia.

Oct. 3, 1986.

David J. Branson, Sharon A. Sprague, Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for defendants.

Mark Lane, Linda Huber, Washington, D.C., for plaintiff.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

This matter is before the Court on defendants' motion for summary judgment and the plaintiff's opposition thereto. Oral argument was heard July 21, 1986.

This is a defamation action, commenced on November 14, 1984 by plaintiff, a not-for-profit corporation and self-described "citizens' lobby".

The plaintiff filed this diversity libel action in the United States District Court for the District of Columbia alleging that various statements in each of two articles published by the defendants were defamatory.

Named as defendants were John Rees, publisher and editor of *Information Digest*, Sheila Louise Rees, an editorial assistant and writer for *Information Digest* and *Information Digest* itself, a bi-weekly magazine published in Baltimore, Maryland. *Information Digest* is distributed to many newspapers and magazines throughout the country and to various law enforcement agencies including police departments

and the Bureau of Alcohol, Tobacco and Firearms.

The alleged defamation of which plaintiff complains appeared in two separate issues of Information Digest—March 30, 1984, and March 8, 1985, (hereinafter "the 1984 article" and "the 1985 article" respectively).

The 1984 article was entitled "The LaRouche Apparatus in the U.S." and it dealt with Lyndon LaRouche and various organizations allegedly operated by LaRouche. The article portrayed LaRouche as "espousing Marxist, communist, extremist, paranoid, anti-semitic, revolutionary views". (Plaintiff's Second Amended and Supplemental Complaint p. 3) and then, plaintiff alleges, "promulgates the false assertion that Liberty Lobby, Inc. and LaRouche are closely linked and allied, and even that some of LaRouche's more unsavory alleged activities were set in motion as a result of an arrangement with Liberty Lobby."

Thus plaintiff alleges the article damages it "through the technique of guilt by association" and that defendants "falsely imply that all evils they attribute to LaRouche are tolerated by, shared by and to some extent caused by Liberty Lobby." The overall effect of the article, plaintiff concludes, is "untruthfully to place Liberty Lobby among what the article characterizes as disreputable company."

The 1984 article, plaintiff contends, is further defamatory in that it characterizes plaintiff as "race-hating, anti-semitic, totalitarian (and) of the National Socialist model." (Second Amended and Supplemental Complaint p. 6) These alleged libels of Liberty Lobby were also raised in the context of the relationship between Lyndon LaRouche and Liberty Lobby.

The 1985 article, entitled "The Populist Party", according to plaintiff, also imposes liability for defamation in that it too characterizes Liberty Lobby as racialistic, anti-semitic and neo-nazi and further asserts the existence of a long-term relationship between Liberty Lobby and LaRouche.

The plaintiff's status in a defamation action has previously been litigated by the Courts in this Circuit.[1] There is nothing in the record in this case to suggest the status of plaintiff has changed. Plaintiff has had "a full and fair opportunity to litigate the issue of its public figure status. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). In this case plaintiff is a public figure for defamation action purposes.[2]

In this most recent term the United States Supreme Court held in *Anderson v. Liberty Lobby*, 106 S.Ct. 2505 (1986) that a court, in ruling on a motion for summary judgment under Rule 56 of the Federal

---

1. In *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563 (D.C.Cir.1984), *aff'd on other issue*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court of Appeals noted that plaintiff is a public figure stating that Liberty Lobby (and Willis Carto) does "not question the District Court's ruling that they were so called limited purpose public figures, and that the alleged libels pertained to the area in which they held this status." 746 F.2d at 1569.

In the Anderson action, the District Court relying on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) found Liberty Lobby, as a political lobbyist not to be a public figure for all purposes and in all contexts, but a public figure who has voluntarily injected himself or is drawn into a particular public controversy, and thus a public figure for a limited range of issues.

Similarly, in *Liberty Lobby, Inc. v. National Review* (Div. Action No. 80–1067, slip op. J. Joyce Hens Green) Liberty Lobby conceded that

it is a public figure for defamation action purposes.

2. As plaintiff is a public figure this Court must apply the *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) actual malice test.

In *New York Times*, the Court held that a public official would be prohibited from recovering damages for a defamatory falsehood unless he proves that the statement was made with 'actual malice'—"that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279–80, 84 S.Ct. at 726.

It is now well established that the constitutional actual malice element is required in cases involving public figures as well as cases involving public officials. *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 336, n. 7, 94 S.Ct. 2997, 3005, n. 7, 41 L.Ed.2d 789 (1974).

Rules of Civil Procedure, must apply the clear-and-convincing evidence standard. The Supreme Court in *Anderson* promulgated the following test for this Court to apply:

> When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times*. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.

106 S.Ct. at 2513.

The Supreme Court further elaborated that:

> Consequently, where the *New York Times* 'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury could reasonably find for either the plaintiff or the defendant. Thus where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

106 S.Ct. at 2514.

As this case nears the two-year mark, many depositions have been taken, many affidavits have been filed and the record is heavily weighted with documentary evidence, much of it the publications and writings of both the plaintiff and the defendants. Discovery has been exhaustive.

After a review of this record the Court concludes that there is de minimis evidence that the defendants published their article with knowing falsity or reckless disregard of the truth or falsity of the assertions in those articles.

The primary argument of plaintiff is that a reasonable jury, on the basis of the affidavits of James D. Tucker (Pl's Exhibit A) and Stanley Rittenhouse (Pl's Exhibit H), could find clear and convincing evidence of malice on the part of defendants. These affidavits place in dispute what the affiants said to the defendant, John Rees, in interviews pertaining to the relationship between plaintiff and LaRouche. Under the *Anderson* test, issues of credibility certainly remain jury questions. However, the clear and convincing standard on the state of mind of the defendants must be viewed from the entire record. And it is the plaintiff's own writings which negate any clear evidence of malice. Those written expressions and some overt actions by plaintiff as well as the defendant's attribution to other sources, cause the plaintiff's evidence to fall far short of the clear and convincing standard.

On the assertion of the relationship between Liberty Lobby and LaRouche, the record shows the following:

1. On May 24, 1977 Congressman Larry McDonald wrote a letter to Colonel Dall of Liberty Lobby stating: "Liberty Lobby and *Spotlight* (Liberty Lobby Newspaper) have collaborated with a Marxist-Leninist organization called the National Caucus of Labor Committees, also known as the U.S. Labor Party" (LaRouche's organization). (000250 of Appendix B to affidavit of John Rees)

2. In a letter from *Spotlight* editor Jim Tucker to Congressman Larry McDonald, reprinted in *Congressional Record*, March 16, 1982, Tucker states: "My struggle began with direct orders to publish stories reflecting favorably on the Labor Party which had made statements which some people at Liberty Lobby appreciated." (Defendant's Exhibit 16)

3. A March 1979 article in the *National Review* written by former U.S. Labor Party member Gregory Rose made reference to the LaRouche organization's "intimate ties with Willis Carto's Liberty Lobby." (Defendant's Exhibit 11)

4. A *New York Times* article of October 8, 1979 written by Paul Montgomery of

that newspaper made reference to Liberty Lobby as one of the LaRouche organization's "first right wing contacts." As to defendant's state of mind, the Court notes that in the 1984 article, defendant Rees, attributed the material to the New York Times.

5. A January 10, 1980 position paper issued by Liberty Lobby stated that the USLP should "qualify" for a "political alliance." (Defendant's Exhibit 16)

6. In the September 9, 1981, edition of the *Congressional Record* Congressman Larry McDonald published a statement in which he made reference to the September 7, 1981 issue of *Spotlight*. McDonald stated: "Much of the *Spotlight* article appears to have been lifted from the writings of the LaRouche cult ..." McDonald further stated: *"Spotlight's* copying of the LaRouche material is obvious ..."* and then stated "But why should Liberty Lobby, which claims to be both patriotic and anti-communist, jump in on LaRouche's side?" (Defendant's Exhibit 13)

7. Liberty Lobby promoted and sold copies of U.S. Labor Party books *Dope, Inc.* and *Carter and the Party of International Terrorism* (Defendant's Exhibit 37, Page 13 of Plaintiff's Response to Defendant's First Set of Interrogatories)

8. The September 3, 1984, issue of *Spotlight* reprinted an article from a LaRouche publication *Investigative Leads* entitled "Queer Ideas Pushed in U.S."

On the issue of actual malice in alleging Liberty Lobby's racism, anti-semitism and neo-nazism the record discloses that:

1. In January, 1981, in the *Congressional Record* Congressman McDonald described Liberty Lobby as "an organization founded by Willis Carto who seeks to use American populist causes as the method to bring about a National Socialist (Nazi) regime." (Defendant's Exhibit 7).

2. An article in the September 10, 1971 issue of *National Review* contains an excerpt from a letter written by Willis Carto which states in part: "Hitler's defeat was the defeat of Europe. And America. How could we have been so blind? The blame it seems must be laid at the door of the International Jews. It was their propoganda, lies and demands which blinded the West as to what Germany was doing." (Defendant's Exhibit 8)

3. A report by the Anti-Defamation League of B'nai B'rith entitled *Extremism on the Right* states: "Liberty Lobby, self-described as a 'pressure group for patriotism,' is the best-financed anti-semitic organization in the United States." (Defendant's Exhibit 9)

4. Willis Carto wrote the 35–page introduction for a 1983 edition of Francis P. Yockey's book *Imperium.* Passages from that book state that "the Jew is a product of another Culture," and that "the Negro is below our Culture." (Defendant's Fxhibit 5)

5. In *Liberty Lobby v. Pearson,* 390 F.2d 489, 491 n. 7 (D.C.Cir.1968) Judge Burger stated that Liberty Lobby's materials contained racist and anti-semitic matter.

Other than the credibility issue raised by the two affidavits, nothing that plaintiff has proffered indicates that defendants researched, wrote and published their article in "extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1966).

In examining the salient facts in this case which would tend to prove or disprove the existence of actual malice on the part of defendants the Court concludes that any evidence of actual malice falls far short of the clear and convincing standard.

Clear and convincing evidence has been defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to allegations sought to be established." See, *Hobson v. Eaton,* 399 F.2d 781, 784 A.2d (6th Cir.1968). "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is

required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Id.*

"Whether evidence is clear and convincing requires weighing, comparing, testing, and judging it when considered in connection with all the facts and circumstances in evidence" 30 Am.Jur. *Evidence* Sec. 1167 (1967).

It would appear that in making the editorial decision to write that a relationship existed between Liberty Lobby and the LaRouche organization, that defendants reasonably relied on the above salient representations of facts.

The defendants had before them a panoply of documents some of them Liberty Lobby's, others being national newspapers and magazines. A former U.S. Labor Party Member had described in a *National Review* article the "intimate ties" between the two organizations. A Liberty Lobby position paper stated that the U.S. Labor Party should qualify as a political ally of Liberty Lobby. The late Congressman Larry McDonald on at least two separate occasions asserted the collaboration of Liberty Lobby and *Spotlight* with the U.S. Labor Party. The former editor of *Spotlight* acknowledged that he published favorable articles on the U.S. Labor Party on direct orders from his superiors.

This Court's mandate is to examine all the facts and circumstances in the record before it. The facts in this record could not produce in a reasonable juror's mind firm belief or conviction as to the existence of actual malice. There was a sufficient basis upon which defendant could reasonably infer the existence of a close relationship between Liberty Lobby and the LaRouche organization.

The Court notes that in his Memorandum Opinion of June 10, 1986, on a discovery related issue, Magistrate Arthur Burnett stated that in his view, "the plaintiff has sufficient other evidence suggesting fabrication, or at least reckless disregard of the truth based both on alternative sources and plaintiff's counsel's eliciting responses from both John Rees and Sheila Louise Rees, which as a matter of circumstantial

evidence, will support arguments of malice, i.e. knowing falsity or reckless disregard of the truth." Memorandum Opinion 6/10/86 at p. 8. The Magistrate added that "it appears that the plaintiff already has substantial evidence to establish knowing falsity or reckless disregard of the truth ..." Memorandum Opinion at pp. 10–11.

The Magistrate's discovery observations notwithstanding, the Court iterates that its mandate is to examine the entire record before it and to apply a clear and convincing standard. This issue and standard were not before the Magistrate.

There is no clear and convincing evidence in this record that defendants had a "high degree of awareness of ... probable falsity," *Garrison v. Louisiana* 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964), or that defendants had "in fact entertained serious doubts as to the truth of (their) publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). On the contrary, defendants have proffered affirmative evidence tending to show that the articles were published in good faith and without actual malice. The defendants consulted many previously published accounts of plaintiff's anti-semitism, racism and neo-nazism and of plaintiff's relationship with Lyndon LaRouche and his organization.

On August 18, 1986, this Court stated from the bench that the defense of substantial truth was an additional ground for granting defendants' motion for summary judgment as to the allegation of anti-semitism. Upon reconsideration the Court does not enter such a finding However, the extensive record before Judge Jackson in *Liberty Lobby, Inc. v. Dow Jones & Co.,* 638 F.Supp. 1149 (D.D.C.1986) led that Court to hold that Liberty Lobby was an anti-semitic organization. Although the record in this case would also support such a finding this Court need only apply to all allegedly defamatory statements the clear and convincing standard of actual malice.

This Court concludes, by applying the test in *Anderson,* that plaintiff cannot show to a reasonable trier of fact by clear and convincing evidence that defendant

published either of its two articles with actual malice—that is, with knowledge of its falsity or with reckless disregard for whether it was false or not.

Accordingly, defendant's Motion for Summary Judgment is GRANTED.