LIBERTY LOBBY, INC., Appellant,

v.

John REES, et al.

No. 86–7091.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 1988.

Decided July 29, 1988.

Mark Lane, Washington, D.C., for appellant.

David J. Branson, Washington, D.C., for appellees.

Before MIKVA and Ruth Bader GINSBURG, Circuit Judges, and

**596**

RE[*], Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Chief Judge RE.

RE, Chief Judge:

In this libel action, appellant, Liberty Lobby, Inc., appeals from an order of the United States District Court for the District of Columbia which granted appellees' motion for summary judgment. Liberty Lobby charged that the appellees John Rees, Sheila Louise Rees, and *Information Digest* libeled it by publishing two articles in *Information Digest* which contained false and defamatory statements about Liberty Lobby. The district court held that Liberty Lobby failed to establish that a reasonable trier of fact could find, by clear and convincing evidence, that the appellees published either of the two articles with actual malice.

Liberty Lobby urges three grounds in support of its contention that the district court erred in holding that a reasonable jury could not find actual malice by clear and convincing evidence: (1) in the course of denying a discovery motion made by Liberty Lobby, the Magistrate stated that Liberty Lobby already had "substantial evidence to establish knowing falsity"; (2) two of the Reeses' sources denied giving them information supporting the accusations made against Liberty Lobby; and (3) the Reeses relied upon a published article which the publisher previously had retracted. Liberty Lobby also contends that the district court erred in failing to grant its motion, made pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, for permission to extend discovery, and to depose certain confidential informants.

The question presented is whether the district court erred in holding that Liberty Lobby failed to show that a reasonable jury could find, by clear and convincing evidence, that the appellees acted with actual malice in their publication of the two articles. Based on facts in the record that are not genuinely in dispute, we hold that a reasonable jury could not find, by clear and convincing evidence, that the Reeses published the articles with knowing falsity, or with reckless disregard for the truth or falsity of statements made in them. Accordingly, we affirm the decision of the district court.

## BACKGROUND

In March 1984, *Information Digest*, a biweekly newspaper written and published by John Rees and Sheila Louise Rees, published an article entitled "The LaRouche Aparatus [sic] in the U.S." The article chronicles Lyndon LaRouche's involvement with various organizations, such as Students for a Democratic Society, the Communist Party U.S.A., and Liberty Lobby. It also describes publications controlled by LaRouche, and organizations operated by him, including the National Caucus of Labor Committees, the United States Labor Party, and the National Democratic Policy Committee. The article characterizes LaRouche as Marxist, communist, extremist, anti-Semitic, and revolutionary. It describes Liberty Lobby and its founder and treasurer, Willis A. Carto, as anti-Semitic.

On November 14, 1984, Liberty Lobby filed suit for libel against John Rees and *Information Digest* in the United States District Court for the District of Columbia. Liberty Lobby alleged that the article defamed it by asserting falsely that Liberty Lobby was closely linked with LaRouche and his organization, and that "some of LaRouche's more unsavory alleged activities were set in motion as a result of an arrangement with Liberty Lobby." In addition, Liberty Lobby contended that the article falsely asserted that the LaRouche organization was "given the run" of the offices maintained by the *Spotlight*, a weekly newspaper published by Liberty Lobby. Liberty Lobby contended that the article "libelously damages Liberty Lobby through the technique of guilt by association. . . . The overall effect of the article is untruthfully to place Liberty Lobby among what the article characterizes as disreputable company."

[*] Sitting by designation pursuant to 28 U.S.C. § 293(a).

In January 1986, Liberty Lobby moved to amend and supplement its complaint by naming Sheila Louise Rees a defendant, and adding a second cause of action alleging that an article in the March 8, 1985 issue of *Information Digest*, entitled "The Populist Party," also contained false and defamatory statements about Liberty Lobby.

The Populist Party article, written by Sheila Louise Rees, discusses the formation, activities, and philosophy of the Populist Party, and describes the role of Liberty Lobby and various individuals associated with it in the Populist Party. The article characterizes Liberty Lobby and its founder and treasurer, Willis A. Carto, as "racialist and anti-Semitic," and refers to the "long-term relationship of the Lyndon H. LaRouche organization with Carto's network."

On May 30, 1986, Liberty Lobby moved to compel John Rees to reveal the identity of a confidential source. United States Magistrate Arthur L. Burnett denied the motion because Liberty Lobby had not shown the requisite need. In passing, the Magistrate stated that "it appears that the plaintiff already has substantial evidence to establish knowing falsity or reckless disregard of the truth, and pursuing these alternative sources would lead ... only to cumulative evidence." *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 23 (D.D.C.1986).

On June 17, 1986, the Reeses moved for summary judgment on the grounds that the articles were published without actual malice and were substantially true. In July 1986, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Liberty Lobby requested leave to conduct additional discovery, and sought access to confidential informants. On October 3, 1986, the district court granted the Reeses' motion for summary judgment. *Liberty Lobby, Inc. v. Rees*, 667 F.Supp. 1, 6 (D.D.C.1986).

In granting the Reeses' motion for summary judgment, the district court stated that it was applying the standard established by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under that standard, on a motion for summary judgment in a defamation action, the court must determine "whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." 477 U.S. at 257, 106 S.Ct. at 2515. After reviewing the record, the district court concluded that "there is de minimis evidence that the defendants published their article with knowing falsity or reckless disregard of the truth or falsity of the assertions in those articles." *Liberty Lobby*, 667 F.Supp. at 3.

█ Liberty Lobby appealed the order of the district court, and the Reeses moved for summary affirmance. This court denied the Reeses' motion, and Liberty Lobby moved for sanctions, costs, and attorneys' fees pursuant to this court's General Rule 23, and Rule 38 of the Federal Rules of Appellate Procedure. A ruling on Liberty Lobby's motion was deferred pending oral argument. Because the application for summary affirmance was not frivolous, and compiled with the rules governing proceedings in this court, Liberty Lobby's motion for sanctions, costs, and attorneys' fees is denied.

### DISCUSSION

█ In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964), the Supreme Court held that a public official is prohibited from "recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court extended the "actual malice" standard to apply to statements made about "public figures." *See id.* at 154–55, 87 S.Ct. at 1991. Liberty Lobby concedes that it is a "public figure" for the purposes of this defamation action. *Liberty Lobby*, 667 F.Supp. at 2. Therefore, it must establish, by "clear and convicing proof," that the Reeses made the allegedly defamatory statements with "ac-

tual malice." *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). Furthermore, the first amendment requires that a public figure bear the burden of proving the falsity of a defamatory statement, as well as actual malice. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). The requirements of showing "clear and convincing proof" of actual malice, and a preponderance of evidence of falsity are also "applicable when considering a motion for summary judgment." *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292–93 (D.C.Cir.1988); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be entered against a party who fails to present sufficient evidence "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Hence, the trial court may properly grant summary judgment if there are no "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

In *Anderson*, the Supreme Court held that "where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson*, 477 U.S. at 255–56, 106 S.Ct. at 2514 (footnote omitted). Hence, to defeat summary judgment Liberty Lobby was required to show that the evidence could support a reasonable jury finding, by clear and convincing evidence, that the defendants acted with actual malice in publishing the two articles in *Information Digest.*

In determining whether a party moving for summary judgment has made a showing that there are no triable issues of fact, a court must view all inferences to be drawn from the underlying facts "in the light most favorable to the party opposing the motion." *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). Since the grant or denial of summary judgment is a determination of law rather than one of fact, we need not defer to the district court's conclusions and reverse only if clearly erroneous, but rather, may review the matter de novo. *See Nepera Chem., Inc. v. Sea–Land Service, Inc.*, 794 F.2d 688, 699 (D.C.Cir.1986). Furthermore, in cases which implicate first amendment issues, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *See Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting *New York Times Co. v. Sullivan*, 376 U.S. at 284–86, 84 S.Ct. at 728–29). This standard of review also applies to decisions of summary judgment in libel actions. *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d at 1293; *Herbert v. Lando*, 781 F.2d 298, 308 (2d Cir.), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

On this appeal, Liberty Lobby maintains that a United States Magistrate in possession of all of the relevant evidence concluded that actual malice had been established. Hence, according to Liberty Lobby, the district court erred in holding that no reasonable juror could have determined that the Reeses acted with actual malice. Liberty Lobby reads too much into the Magistrate's statement. During discovery, Liberty Lobby moved to compel the Reeses to disclose a confidential source. The Magistrate denied the motion on the grounds that Liberty Lobby had neither exhausted alternative sources for the information nor shown a compelling need for disclosure of the name, since its only value was to impeach the

credibility of defendants John and Sheila Rees. *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 23 (D.D.C.1986). Liberty Lobby underscores the Magistrate's comment that, in his view, "the plaintiff has sufficient other evidence suggesting fabrication, or at least reckless disregard of the truth based both on alternative sources and plaintiff's counsel's eliciting responses from both John Rees and Sheila Louise Rees, which as a matter of circumstantial evidence, will support arguments of malice, i.e., knowing falsity or reckless disregard of the truth." *Id.*, at 22.

■ The Magistrate, we emphasize, specifically cautioned that his observation or statement was not intended to "prejudge the merits of this case...." *Liberty Lobby*, at 23. The Reeses also point out that the Magistrate did not review all of the evidence showing their reliance on previously published sources, but heard only Liberty Lobby's questioning of the Reeses at their depositions. Furthermore, the Magistrate had no need to consider the "clear and convincing" standard of actual malice in settling the discovery dispute. Hence, the district court was correct in noting that "[t]his issue and standard were not before the Magistrate," and that his statements were not binding on the court. *Liberty Lobby*, 667 F.Supp. at 5; *see* 28 U.S.C. § 636(b)(1)(A) (1982). Moreover, the district court identified the correct standard, and expressly stated that, "the Court iterates that its mandate is to examine the entire record before it and to apply a clear and convincing standard." *Liberty Lobby*, 667 F.Supp. at 5.

■ Liberty Lobby also submits that, on the basis of the affidavits of James D. Tucker and Stanley Rittenhouse, a reasonable jury could find clear and convincing evidence of actual malice: the affiants are cited as sources for the articles, but, in their affidavits, they deny giving John Rees information as to the relationship between Liberty Lobby and Lyndon La-Rouche, and deny providing support for the charge of anti-Semitism. Liberty Lobby contends that this conflict in the testimony raises issues of credibility suitable for a jury, and suggests actual malice.

The district court, with respect to this matter, stated that "the clear and convincing evidence standard on the state of mind of the defendants must be viewed from the entire record," *Liberty Lobby*, 667 F.Supp. at 3, and concluded that the record revealed that Liberty Lobby's "own writings ... negate any clear evidence of malice. Those written expressions and some overt actions by plaintiff as well as the defendant's [sic] attribution to other sources, cause the plaintiff's evidence to fall far short of the clear and convincing standard." *Id.*

Even if we were to assume that the statements made by affiants were true, they would not alter the Reeses' uncontested showing that the published articles were based on documented evidence. It has been stated that "defamation defendants will not be forced to defend, nor will a trial judge in a later libel case have to retry, the truthfulness of previous reports made by independent publishers." *Rosanova v. Playboy Enters., Inc.,* 580 F.2d 859, 862 (5th Cir.1978). *See also Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d at 1297–98 (no actual malice in Wall Street Journal charge that Liberty Lobby is anti-Semitic).

As stated by the district court, the Reeses provided a multitude of sources on which they relied to support both the characterization of Liberty Lobby as anti-Semitic, and the asserted relationship between LaRouche and Liberty Lobby. In support of their allegation that Liberty Lobby was racist and anti-Semitic, the Reeses submitted the following items, among others: (1) a statement by Congressman Larry McDonald which described Liberty Lobby as "an organization founded by Willis Carto who seeks to use American populist causes as the method to bring about a National Socialist (Nazi) regime." 127 Cong.Rec. 380–381 (1981); (2) an article in the September 10, 1971 issue of *National Review* that contained an excerpt from a letter written by Willis Carto, which states that the international Jews, by their "propaganda, lies and demands ... blinded the West as to

what [Hitler's] Germany was doing"; (3) two reports in *Extremism on the Right*, by the Anti–Defamation League of B'nai B'rith, that described Liberty Lobby as "the best-financed anti-Semitic organization in the United States"; (4) an introduction written by Willis Carto to the book *Imperium*, which was sold and advertised by Liberty Lobby, and which contained passages such as "the Jew is a product of another Culture," and "the Negro is below our Culture"; (5) an article in *Our Town* that described Liberty Lobby as "a rabidly anti-Semitic outfit"; (6) a *New York Times* article which noted that the U.S. Labor Party's "anti-Semitic turn" could be traced to its contact with Liberty Lobby's *Spotlight;* and (7) the observation of then Circuit Judge Warren E. Burger that Liberty Lobby supports "various programs of 'political education,' some of which contain overtones of anti-Semitism and racism...." *Liberty Lobby, Inc. v. Pearson,* 390 F.2d 489, 491 n. 7 (D.C.Cir.1968).

Liberty Lobby also argues that summary judgment was improper since: (1) the Reeses' reliance on Congressman McDonald's remarks was inappropriate because Sheila Rees previously had worked for the Congressman; and (2) the Reeses' reliance on the *National Review* article, and Carto's introduction to *Imperium* was inappropriate because Liberty Lobby is distinct from Willis Carto.

Liberty Lobby's argument that the Reeses "laundered" their views through Congressman McDonald must fail because the Congressman did not rely exclusively on the Reeses as sources, and the conclusions he formed on Liberty Lobby were his own. Finally, since Willis Carto is the founder and treasurer of Liberty Lobby it was not unreasonable for the Reeses to conclude that Liberty Lobby shared his views.

To establish the relationship between Liberty Lobby and LaRouche, the Reeses submitted the following items, among others: (1) a *National Review* article written by former Labor Party member Gregory Rose, which made reference to "intimate ties" between LaRouche and Liberty Lobby; (2) a letter from Congressman Mc-Donald to Colonel Dall of Liberty Lobby stating that Liberty Lobby and the *Spotlight* have collaborated with the U.S. Labor Party; (3) a letter written by James Tucker, former editor of the *Spotlight,* reporting that he had been ordered to publish stories favorable to the U.S. Labor Party; (4) a *New York Times* article which made reference to Liberty Lobby as the "first right wing contact" to one of LaRouche's organizations; (5) Liberty Lobby's memorandum of January 10, 1980, on LaRouche's U.S. Labor Party, which was also published in the *Spotlight;* (6) the *Spotlight*'s October 11, 1976 review of the U.S. Labor Party's book, *Carter and the Party of International Terrorism,* published with an advertisement for the book through Liberty Lobby; and (7) Liberty Lobby's republication of an article from the LaRouche publication *Investigative Leads.*

In addition to these published sources, the Reeses relied on numerous interviews with individuals, including Kevin Lynch, articles editor of *National Review,* and Dennis King, author of the *Our Town* series on LaRouche.

Liberty Lobby's only argument of any weight at all derives from one sentence in the over 40–page single-spaced John Rees report: "Scott Thompson and others from the LaRouche operation were given the run of *Spotlight*'s Capitol Hill offices and produced material for that publication." *See The LaRouche Aparatus [sic] in the U.S.,* 17 Information Digest 79 (1984). Actually, the *Spotlight* reproduced two versions of an article which originally appeared in the LaRouche publication *Investigative Leads.* The article entitled "Queer Ideas Pushed in U.S." appeared in the September 3, 1984 issue of the *Spotlight,* and another version of the article entitled "International Perverts Push Queer Ideas in United States" appeared in the *Spotlight* 4 months later. Although the link to LaRouche was not indicated specifically, both articles bore the by-line "From 'Investigative Leads.'"

■ As a source for the statement that "the LaRouche people" were "given the run" of the *Spotlight*'s offices, John Rees cited the report in *National Review* that

"Thompson [from LaRouche's organization] met regularly with Carto [Liberty Lobby's founder] through 1975 and 1976." The statement "given the run" may suggest more than regular meetings, and may go beyond journalistic exaggeration or embellishment. Nevertheless, minor inaccuracies will not give rise to a defamation claim when the ultimate defamatory implications are themselves not actionable. *See Tavoulareas v. Piro*, 817 F.2d 762, 788 (D.C.Cir.) (en banc), *cert. denied*, — U.S. —, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987); *see also* Restatement (Second) of Torts § 581A comment f, at 237 (1977). Furthermore, actual malice is not established in cases in which the statement is substantially accurate. *See Tavoulareas*, 817 F.2d at 787–88 (no actual malice in alleging "direct link" between two companies with no formal ties, where numerous other connections made the statement substantially accurate).

It is evident that the Reeses offered numerous published documents to support their charge that Liberty Lobby associated with the LaRouche organization. Hence, the statement cited by the plaintiff as inaccurate cannot be isolated from its context, and does not constitute a separate and distinct defamation. Liberty Lobby also argued that the Reeses improperly relied on an article published in *National Review*, which had retracted its allegations of "intimate ties" linking Liberty Lobby to LaRouche. The retraction, however, involved only one sentence, and did not affect the description of the ties between the two groups.

■ Lastly, Liberty Lobby asserts that John Rees became angry after Rittenhouse refused to state in his interview that Liberty Lobby and LaRouche had a close relationship. Liberty Lobby contends that Rees' action demonstrates his "animosity and hatred" for Liberty Lobby and supports its claim of actual malice. The law is clear, however, that "[a]n adversarial stance is fully consistent with professional, investigative reporting" and is "not indicative of actual malice." *Tavoulareas*, 817 F.2d at 795.

Liberty Lobby also challenged the district court's failure to grant its application, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to depose Dennis King, author of an article in *Our Town*, and Martha Powers, who had typed some business letters for the Reeses and was also their landlady. The record shows that Liberty Lobby had known for 2 years that the *Our Town* article was a source for the Reeses' articles, and that at most, Martha Powers played a minor role in this dispute. In light of the lengthy and exhaustive discovery period, the district court's denial of appellant's motion was not an abuse of discretion.

We need not burden this opinion by further recitations from the record, for the absence of sufficient evidence of actual malice is strikingly apparent. The Supreme Court has emphasized that actual malice is not ill will or personal spite; it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *See Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82–83, 88 S.Ct. 197, 198–99, 19 L.Ed.2d 248 (1967). The test for the reckless disregard of the truth is not whether a reasonably prudent person would have published the statement, but rather, whether there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

## CONCLUSION

After a thorough review of the record, we hold, in agreement with the district judge, that Liberty Lobby did not demonstrate the existence of sufficient evidence to permit a reasonable jury finding, rooted in clear and convincing proof, that the statements were made with knowledge that they were false, or with reckless disregard of whether or not they were true. Accordingly, the district court's entry of summary judgment against Liberty Lobby is affirmed.