United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 8, 1998 Decided November 6, 1998 

 No. 97-5313

 J.S.G. Boggs, 

 Appellant

 v.

 Robert E. Rubin, Secretary of the Treasury, et al., 

 Appellees

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 93cv01845)

 Kent A. Yalowitz argued the cause for appellant. With him 
on the briefs were Dennis G. Lyons and Stephen Sacks. 
Philip W. Horton entered an appearance.

 Scott S. Harris, Assistant U.S. Attorney, argued the cause 
for appellees. With him on the brief were Wilma A. Lewis, 
U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attor-
ney.


 Before: Ginsburg, Sentelle and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Sentelle.

 Separate opinion, concurring in part and dissenting in part, 
filed by Circuit Judge Rogers.

 Sentelle, Circuit Judge: Appellant J.S.G. Boggs, who 
describes himself as an internationally-recognized artist, cre-
ates images of currency which he uses in transactions de-
signed to explore the meaning and value of money. He 
appeals from a district court grant of summary judgment 
ruling that his reproductions of United States currency vio-
late federal counterfeiting statutes, making them contraband 
per se and forfeit as a result. Boggs raises three claims of 
error before this court. First, he argues that his "Boggs 
Bills" are protected by the First Amendment, and that this 
case is controlled by the line of cases creating increased pre-
seizure procedural safeguards for expressive materials. Be-
cause those safeguards were not observed, he argues, it was 
improper for the district court to reach a judgment on the 
merits. Second, he argues that the district court erred by 
conducting an in camera, ex parte examination of his work 
when ruling on cross-motions for summary judgment. Final-
ly, he contends that the court below applied the wrong 
standard in determining that the bills are counterfeit. Boggs 
argues that these errors require us to order the government 
to return his artwork, or grant him an adversarial hearing in 
open court. We disagree. The district court correctly stated 
and, so far as we can tell from the record before us, correctly 
applied the appropriate standards in this case. We affirm for 
the reasons stated below.

 I. Background

 The extensive factual background has been discussed in 
detail in Boggs v. Bowron, 842 F. Supp. 542, 544-46 (D.D.C. 
1993), aff'd, 67 F.3d 972 (D.C. Cir. 1995) (unpublished table 
decision), and Boggs v. Merletti, 987 F. Supp. 1, 3-6 (D.D.C. 
1997), and we need not reiterate it here. We supply only the 
detail necessary to explain our decision. Art is supposed to 
imitate life, but when the subject matter is money, if it 
imitates life too closely it becomes counterfeiting. Boggs 
creates trompe l'oeil (so lifelike as to fool the eye) images of 

U.S. currency with alterations such as substituted names or 
pictures, or non-existent denominations, but generally with 
the same size, shape, layout and color as legal tender. Boggs 
then barters his drawings in return for goods and services. 
He has spent thousands of his pictures as currency since he 
began this project. No one contends that Boggs intends to 
defraud his customers. Boggs explains to the people receiv-
ing his bills that he is an artist and that the bills are not real 
cash. He then engages them in a discussion on the value of 
money and the social and political institutions that underlie 
the system of exchange. But the transactions do not end 
there. Boggs's ultimate customers come to him to purchase 
the entire transaction. Boggs gives them a receipt for the 
goods he purchased, the change he received, and the name of 
the person who accepted his "Boggs Bills" as payment. The 
buyer goes to the holder of the Boggs Bill and negotiates a 
purchase price. Boggs then works with the buyer, putting 
together a display including the art work, the receipt and the 
change.

 Because of the nature of his work, Boggs has drawn the 
attention of the counterfeiting investigators of the Secret 
Service on many occasions, although he has never been 
criminally prosecuted. This case arose because in two sepa-
rate events, in Cheyenne, Wyoming, in 1991 and Pittsburgh, 
Pennsylvania, in 1993, Secret Service agents seized Boggs's 
artwork as contraband counterfeit bills violating the require-
ments of 18 U.S.C. s 474.

 In Cheyenne, Secret Service agents were told that Boggs 
had tried to buy goods at a local Kmart, explaining that he 
wanted to get face value for a $100 Boggs Bill. A Secret 
Service agent and the U.S. Attorney for the District of 
Wyoming visited his hotel room without a warrant and, after 
what Boggs characterized as tense negotiations conducted 
under the threat of arrest, fifteen Boggs Bills were taken 
from his hotel room. Boggs was never criminally prosecuted.

 In Pittsburgh, Boggs planned to proceed on a much gran-
der scale. He conceived and publicized "Project Pittsburgh," 
his plan to spend $1 million in Boggs Bills in the Pittsburgh 
area, asking each recipient to pass the bill 5 times before 

taking it out of circulation. In November 1992, officials from 
the United States Attorney's office and the Secret Service 
met and discussed Boggs's plans. The group decided that 
Boggs could not be allowed to distribute $1 million in Boggs 
Bills. Secret Service agents acting pursuant to warrants 
seized more than 1,300 items from Boggs's home and studio.

 Boggs requested the return of all of his property, exhaust-
ed his administrative remedies and began this action.

 II. Proceedings in the District Court

 Boggs filed an action in the district court on September 3, 
1993, seeking an injunction against prosecution and the re-
turn of the Boggs Bills seized in Cheyenne and Pittsburgh. 
On December 9, 1993, the district court denied the prelimi-
nary injunction and refused to enjoin future prosecution. See 
Bowron, 842 F. Supp. at 562-63. The district court also ruled 
that 18 U.S.C. ss 474 and 504 are constitutional on their face 
and as applied. Boggs filed an interlocutory appeal with this 
court on the First Amendment issue, seeking a ruling that the 
First Amendment prevented the counterfeiting sections from 
applying to his work. In October, 1995, on interlocutory 
appeal we upheld the district court's decision that the statute 
was constitutional. We affirmed the district court's denial of 
injunctive relief and remanded. See Boggs v. Bowron, 67 
F.3d 972 (D.C. Cir. 1993) (unpublished table decision).

 Following remand, both parties made cross-motions for 
summary judgment. Boggs argued that the warrantless sei-
zure in Cheyenne and the seizure without a prior hearing in 
Pittsburgh violated heightened First Amendment procedural 
guarantees for presumptively expressive materials, and that 
the appropriate remedy was return of the seized goods. 
Boggs also argued that the heightened standards previously 
applied in obscenity cases, including the right to a pre-seizure 
adversarial hearing, should have been applied in this case. 
The government argued that the First Amendment's height-
ened standards do not apply, and that a judicial hearing is not 
constitutionally required after the seizure of counterfeit cur-
rency. The government also argued that it could not be 
required to return the Boggs Bills because they are contra-
band prohibited by 18 U.S.C. ss 474 and 481.

 Boggs moved for a hearing in open court to determine if 
the bills were contraband per se and was denied one by the 
district court. On October 23, 1997, the district court inspect-
ed in camera all of the Boggs Bills seized in Pittsburgh. The 
court agreed with the Secret Service that certain bills were 
contraband within the meaning of sections 474 and 481 of the 
criminal code, and that they could not be returned to Boggs. 
The district court therefore granted the government's motion 
for summary judgment and dismissed the case with prejudice.

 III. Analysis

 A.Contraband per se

 We need not determine whether the Cheyenne seizure was 
legal under the Fourth Amendment because Boggs does not 
challenge the premise that if the seized bills violate the 
likeness or similitude standards in 18 U.S.C. s 474, they are 
contraband per se and cannot be returned. Contraband per 
se comprises objects which are inherently unlawful to possess, 
regardless of how they are used. As we explain below, the 
Boggs Bills in this case fall within that category. The district 
court properly noted that "[i]ndividuals have no property 
right in contraband materials and contraband materials may 
not be returned to them." Merletti, 987 F. Supp. at 10. This 
Circuit addressed the issue in United States v. Farrell, 606 
F.2d 1341, 1344 (D.C. Cir. 1979):

 Decisional law recognizes two kinds of contraband. 
 Traditional or per se contraband is defined as "objects 
 the possession of which, without more, constitutes a 
 crime." One 1958 Plymouth Sedan v. Pennsylvania, 380 
 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). 
 It is well established that a claimant has no right "to 
 have [per se contraband] returned to him." United 
 States v. Jeffers, 342 U.S. 48, 54, 72 S.Ct. 93, 96, 96 L.Ed. 
 59 (1951); Trupiano v. United States, 334 U.S. 699, 710, 
 68 S.Ct. 1229, 92 L.Ed. 1663 (1948).

We now turn to whether the District Court correctly found 
that the Boggs Bills were contraband per se.


 B.First Amendment Considerations

 The main thrust of Boggs's argument is not that the 
district court erred in its determination that the Boggs Bills 
violate the statutory requirements, but rather that the district 
court erred in looking at the bills at all. Boggs argues that 
special procedures established by the Supreme Court under 
the First Amendment protecting books and films in obscenity 
cases apply with equal force to his artwork. The Supreme 
Court has indeed held law enforcement officers to a higher 
standard when presumptively expressive materials are in-
volved because of the risk of prior restraint and censorship. 
See, e.g., Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 
(1989) (recognizing the risk of prior restraint); see also 
Roaden v. Kentucky, 413 U.S. 496, 501 (1973) (holding that 
seizure of expressive materials in some instances requires 
additional safeguards); Heller v. New York, 413 U.S. 483, 
491-92 (1973); Huffman v. United States, 470 F.2d 386, 392 
(D.C. Cir. 1971). Boggs suggests that the Secret Service 
should have met more stringent warrant requirements and 
that he should have been granted a prior adversarial hearing 
before an independent judicial officer. We disagree.

 The cases Boggs cites are all obscenity cases, where signifi-
cant judgment was needed to determine if the seized materi-
als violated community standards. We need not determine 
the range of cases to which additional protection would apply. 
We simply hold that on the facts before us, they do not. The 
important First Amendment concerns advanced by the Su-
preme Court in the obscenity cases are not present to the 
same extent here. Boggs's artwork is designed to look like 
money. While some judgment is needed on the part of the 
officers charged with enforcing the counterfeiting statutes, 
the inquiry is not inherently content-based and thus poses 
little risk of acting as a prior restraint on expressive materi-
als.

 C.In Camera Examination

 Boggs objects to the district court's in camera examination 
of the bills when ruling on the motions for summary judg-
ment. He also alleges that there may have been inappropri-

ate ex parte communication between the government and the 
district court when the Boggs Bills were submitted. We hold 
that he has no right to have the evidence examined in open 
court on motions for summary judgment. See Spark v. 
Catholic Univ. of Am., 510 F.2d 1277, 1280 (D.C. Cir. 1975) 
(district court may "dispense with oral arguments in appro-
priate circumstances in the interest of judicial economy"). 
The district court awarded summary judgment in this case in 
accordance with Fed. R. Civ. P. 56(c) which states that "[t]he 
judgment sought shall be rendered forthwith if the pleadings, 
depositions, answers to interrogatories, and admissions on 
file, together with the affidavits, if any, show that there is no 
genuine issue as to any material fact and that the moving 
party is entitled to a judgment as a matter of law." It is 
common practice for trial judges to examine not only written 
evidence, but also exhibits when deciding if there is a genuine 
issue of material fact. The existence of the specific bills is 
not a genuine issue of fact. The district court was applying 
the law to the bills before it to determine if they violated the 
counterfeiting statutes and were forfeit as contraband. We 
find nothing unusual in the district court conducting an in 
camera examination of the relevant evidence here. It ap-
pears that the district court properly examined the items 
submitted to it by the Secret Service, and there is nothing in 
either the district court's memorandum opinion or the record 
to suggest that it relied on any ex parte communication in 
reaching its decision.

 Boggs now complains that he cannot tell from the record 
what was submitted, but he received notice from the govern-
ment listing the items submitted. See Defendants' Notice of 
In Camera Submission, reprinted in Joint Appendix at 263 
(listing the materials being presented to the court). Boggs 
was free to request access to the materials at that time. He 
did not. He failed to make a timely objection to the submis-
sion below, and did not move to supplement the record here 
under Fed. R. App. P. 10(e) or otherwise. If there was error, 
we hold that it was insignificant and Boggs could have 
avoided any ill effect by proper motion below.


 D.Wrong Standard

 Finally, we find that Boggs's argument that the district 
court applied the wrong standard has no merit. We have 
already considered and upheld the district court's constitu-
tional analysis. We now hold that the district court correctly 
stated the standard under 18 U.S.C. s 492, which provides in 
pertinent part:

 All counterfeits of any coins or obligations or other 
 securities of the United States or of any foreign govern-
 ment, or any articles, devices, and other things made, 
 possessed, or used in violation of this chapter or of 
 sections 331-333, 335, 336, 642 or 1720, of this title, or 
 any material or apparatus used or fitted or intended to 
 be used, in the making of such counterfeits, articles, 
 devices or things, found in the possession of any person 
 without authority from the Secretary of the Treasury or 
 other proper officer, shall be forfeited to the United 
 States.

The district court correctly found that the statute prohibits 
the possession of bills made or executed after the similitude 
of United States obligations. Examining certain of the bills 
seized in Pittsburgh, the district court concluded that

 all of the items that the Secret Service contends are 
 contraband are, to this court's satisfaction, reproductions 
 of genuine currency of the United States or reproduc-
 tions of genuine foreign currency. Each are in the 
 likeness and similitude of genuine currency and therefore 
 in violation of 18 U.S.C. ss 472 or 481. Each reproduc-
 tion has the general design and appearance of genuine 
 United States or foreign currency. None of the pieces in 
 dispute meet the size and coloration exemptions of 18 
 U.S.C. s 504 and 31 C.F.R. 411.1. This court is there-
 fore compelled to hold that [the disputed items] are 
 contraband. These items are therefore forfeited to the 
 United States without the necessity of forfeiture proce-
 dures.


Merletti, 987 F. Supp. at 11. The district court properly 
applied the same analysis regarding the bills seized in Chey-
enne.

 Boggs now asks us to overturn the district court's grant of 
summary judgment on the merits. On brief, he opposed the 
government's offer to present the Boggs Bills to this court, 
only changing his position during oral argument. After oral 
argument, he moved to supplement the record, and now asks 
that he be allowed to argue the merits of the district court's 
determination that the bills violate the counterfeiting statute. 
This is simply too late in the appellate process, and we hold 
that he has waived any right to our full examination of the 
evidence. Rule 28(a)(4) of the Federal Rules of Appellate 
Procedure requires that the appellant's argument "contain 
'the contentions of the appellant with respect to the issues 
presented, and the reasons therefor, with citations to the 
authorities, statutes and parts of the record relied on.' " See 
Carducci v. Regan, 714 F.2d 171 (D.C. Cir. 1983) (refusing to 
determine issue that had not been fully briefed by parties). 
If Boggs wished this court to make a full reexamination of the 
merits of the grant of summary judgment, it was his duty as 
appellant to request that this court do so and present argu-
ment on that question. We will not consider at this late stage 
an argument that the appellant failed to raise.

 IV. Conclusion

 We conclude that the district court did not err either in the 
procedure it followed or the standard it applied in ruling on 
the motions for summary judgment before it and concluding 
that the bills it examined were forfeit as contraband. The 
judgment of the district court is affirmed.

 Rogers, Circuit Judge, concurring in part and dissenting in 
part: The court affirms on de novo review the district court's 
grant of summary judgment by concluding that "art" it has 
never seen is "so far as we can tell" contraband per se. See 
opinion at 2. Boggs should not be too surprised by this 
result, as his appeal focused on his First Amendment proce-
dural claim without explicitly contending that his art does not 
meet the statutory definition of counterfeit currency. Rather, 
he contended that the district court applied the wrong stan-
dard in concluding his art was counterfeit under 18 U.S.C. 
s 474. But on de novo review, where this court "sits in the 
same position as the district court,"1 we cannot truncate 
Boggs' contentions as quickly and neatly as the court would 
like.

 Implicit in Boggs' challenge to the manner in which the 
district court reviewed his work and the gloss the court 
imposed on 18 U.S.C. s 474 is the assumption that if he does 
not prevail on these claims, the question of the legal status of 
his bills will remain open for the court. Indeed, the first 
paragraph of his argument in his brief cites a decision from 
this court noting that we have an obligation to make an 
independent examination of the record as a whole in cases 
implicating the First Amendment. Appellant's Brief at 15 
(citing Liberty Lobby, Inc. v. Rees, 852 F.2d 595, 598 (D.C. 
Cir. 1988) (quoting New York Times Co. v. Sullivan, 376 U.S. 
254, 284-86 (1964))). In the last paragraph of his brief he 
seeks, as an alternative to reversal and prompt return of his 
property, further proceedings with respect to the remaining 
materials. Id. at 32. Moreover, in its brief the government 
relied on the fact that this court must "undertake its own 
independent analysis ... of whether the bills in question are 
'in the likeness of' or 'after the similitude of' genuine currency 
within the meaning of Criminal Code s 474" in maintaining 
that whether the district court viewed the bills in camera "is 

__________
 1 Stroup v. GSC Serv. Inc., 938 F.2d 20, 22 (2d Cir. 1991); 
Bloomington Nat'l Bank v. Telfer, 916 F.2d 1305, 1307 (7th Cir. 
1990); T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 
F.2d 626, 630 (9th Cir. 1987).


simply beside the point to the issue presented to this Court." 
Appellee's Brief at 12. In response, Boggs contended that 
the government has never demonstrated that each of the 
seized items is contraband per se. Reply Brief at 2.

 Of course, Boggs might have stated his argument more 
clearly by explicitly requesting what he sought implicitly, but 
his failure to take the formal step of adding a sentence to his 
brief seeking a de novo examination by this court of each 
seized item does not warrant the dispositive significance 
attached to it by the court. The court's rigid insistence on 
formality is particularly inappropriate here because in his 
complaint filed in the district court Boggs expressly chal-
lenged the government's "mistaken" interpretation of s 474, 
see Complaint at p 21, and he sought a hearing before the 
district court to oppose the government's classification of his 
art as contraband. Given that this case involves government 
regulation--indeed, confiscation--of expressive materials, and 
that art may at times imitate reality,2 this court is obliged on 
de novo review of the grant of summary judgment to look at 
the Boggs bills to determine if they meet the statutory 
criteria for counterfeit currency.3

 Without viewing the bills, this court cannot determine for 
itself whether the district court correctly applied the law, or 

__________
 2 Labeling a counterfeit bill "art" will not save it from the 
Secret Service's incinerator, but at some point, an artwork's loose 
resemblance to currency will not strip it of First Amendment 
protection. Cf. Regan v. Time, Inc., 468 U.S. 641 (1984) (invalidat-
ing and upholding portions of s 474). Congress struck a balance 
between these extremes in s 474, and it falls to this court to 
determine whether, in the judgment of Congress, Boggs' art imi-
tates reality too effectively.

 3 Our obligation is particularly clear in light of declarations from 
an art professor and a museum curator attesting to the artistic 
integrity of Boggs' work. A third declaration, from a distinguished 
art historian, notes the historical pedigree of Boggs' decision to 
create images of money, and reminds us that since as early as 1886, 
the sensibilities of American artists and anti-counterfeiting authori-
ties have collided.

even if it applied the correct law. It is not sufficient to rely, 
as the court does, see opinion at 8, on the district court's 
recitation of the correct statutory standards. Elsewhere in 
its opinion, the district court described 18 U.S.C. s 474 as 
essentially objective, yet it appears to incorporate a substan-
tial degree of subjectivity.4 In addition, the district court's 
findings that a sponge and bow tie are in the "similitude" of 
actual currency raise questions about its statutory interpreta-
tion that warrant scrutiny on appeal.

 Any doubt that reviewing the Boggs bills is appropriate 
should have been dispelled by the government's advocacy of 
the same result. In its brief, the government invited this 
court to review the bills, and it even brought its trove of 
confiscated art to the oral argument. Only at oral argu-
ment--after Boggs orally moved to supplement the record 
and the government saw the possibility of affirmance without 
exposing the Boggs bills to further judicial scrutiny--did the 
government retreat from its prior position of openness. In-
deed, it is somewhat ironic that in an opinion that turns on 
the concept of waiver, the court ignores the government's 
repeated acceptance of the outcome that the court now deems 
Boggs to have foreclosed.

 Moreover, reviewing the Boggs bills would not be arduous, 
at least not as the court suggests.5 See opinion at 9. If this 
court supplements the record, it would be in the same posi-
tion as the district court, which rendered its decision after 
viewing the bills without conducting a hearing and apparently 
without relying on extraneous source material. The court's 
resolution of appellant's First Amendment claim characterizes 
s 474 as requiring relatively objective judgments that a law 
enforcement officer can make without need for an adversarial 
pre-seizure hearing before a magistrate. See opinion at at 6. 
If s 474 is as easy to apply as the court says it is, there 

__________
 4 No one disputes that Boggs raised a timely challenge to the 
district court's interpretation of s 474.

 5 Of course, arduousness could hardly be determinative of this 
court's responsibility on de novo review.


should be no difficulty in reviewing the Boggs bills without 
further argument from the parties. It may well be that 
Boggs focused on procedural claims rather than the merits of 
the district court's in camera review to postpone an affir-
mance that he may perceive as inevitable, but we will not 
know until we look.

 The court's reliance on Fed. R. App. P. 28(a), see opinion at 
9, is therefore insufficient to abrogate its obligation to review 
the Boggs bills de novo.6 As this circuit has noted, Rule 28 
does not automatically require ignoring issues that a party 
fails to present clearly in its brief. Rather, "substantial 
public interests" or the need to avoid an "unduly harsh" 
result justify relaxing traditional foreclosure principles. Con-
sumers Union v. Federal Power Comm'n, 510 F.2d 656, 662 
n.10 (D.C. Cir. 1975). In such cases, a "balancing of consider-
ations of judicial orderliness and efficiency against the need 
for the greatest possible accuracy in judicial decisionmaking" 
warrants appellate review of ostensibly waived issues. Id. at 
662; see also Columbia Gas Transmission Corp. v. FERC, 
844 F.2d 879, 880 (D.C. Cir. 1988).

 Because this court is unable to review the district court's 
interpretation of s 474--which it purports to affirm--without 
viewing the Boggs bills, I would grant Boggs' motion to 
supplement the record to include the confiscated Boggs bills 
and would view the bills in order to determine de novo 
whether they fall within the statutory definition of counterfeit 
currency. Accordingly, I dissent from Part III(D) of the 
court's opinion.7

__________
 6 The court has authority under Fed. R. App. P. 10(e) to 
supplement the record "on its own initiative."

 7 With respect to Boggs' claim that the district court erred by 
viewing the bills ex parte, I concur in the opinion of the court only 
to the extent that its relies on Boggs' failure to seek access to the 
bills during the district court proceedings. While the district 
court's procedure does not result in reversible error, it is impossible 
to characterize ex parte receipt of unknown materials not in the 
record as "insignificant." I also concur in the court's holding that 
in camera review was otherwise appropriate.