**LIBERTY LOBBY, INC. Plaintiff,**

v.

**John REES, et. al. Defendants.**

**Civ. A. No. 84–3452.**

United States District Court, District of Columbia.

June 10, 1986.

Mark Lane, Linda Huber, Washington, D.C., for plaintiff.

David J. Branson, Sharon A. Sprague, Kaye, Scholer, Fireman, Hays & Handler, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ARTHUR L. BURNETT, Sr., United States Magistrate.

In the course of oral deposition before the United States Magistrate, defendant John Rees, on May 23, 1986, testified that an alleged defamatory statement in the article in the *Information Digest* of March 30, 1984 concerning the relationship between Liberty Lobby, Inc., Willis Carto, the founder of Liberty Lobby, Inc., and *Spotlight,* then published by Liberty Lobby, Inc. and Lyndon LaRouche's various organizations, was, in part, based on information received from a confidential source. The statement in question involved one Ken Duggan, an alleged ultra-conservative

activist, introducing Lyndon LaRouche and his follower, Scott Thompson, to Willis Carto, thereby initiating a collaboration between Liberty Lobby, Inc. and LaRouche's various organizations. Liberty Lobby, Inc. asserts in this case that the claimed relationship is false in the representations in numerous statements set forth in the March 30, 1984 issue of the *Information Digest* by John Rees as publisher. Plaintiff asserts that John Rees knew at the time that the statements and representations were false, or alternatively, he made them with reckless disregard for the truth. When counsel for the plaintiff at the deposition session moved to compel disclosure of the identity of the confidential source, the Magistrate deferred ruling and requested that counsel file legal memoranda on the issue.

■ On May 30, 1986 counsel for the plaintiff filed their memorandum, arguing first that John Rees was not a journalist and therefore, he is not entitled to invoke the First Amendment privilege applicable to protecting a journalist's or reporter's confidential sources. *See generally, Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Carey v. Hume*, 492 F.2d 631 (D.C.Cir.1974); *Liberty Lobby, Inc. v. Anderson*, 96 F.R.D. 10 (D.D.C. 1982). *See also* Kirtley, *Discovery in Libel Cases Involving Confidential Sources and Non-Confidential Information*, 90 Dickinson L.Rev. 641 (1986). The Magistrate finds this contention to be totally without merit. In his affidavit of December 24, 1984 John Rees stated:

John Rees is the publisher and editor of *Information Digest*, a biweekly newsletter on American political and social movements, which he has written, edited and published regularly since 1968. John Rees has published, edited and written *Information Digest* in Baltimore, Maryland since 1974. John Rees is also a reporter and editor for several other

publications, and has (sic) the position of Bureau Chief for *The Review of the News*, a conservative news magazine. He is an accredited member of the U.S. Senate and the House of Representatives Periodical Press Gallery, a member of the United Nations Correspondents Association, and other professional associations. Rees is a professional journalist of more than twenty years standing. Frequent subjects of his writing include national political events and issues, criminal subcultures, terrorism and extremist organizations. In 1975, Rees received an award from the Council Against Communist Aggression for his reporting; and in 1984 was nominated for the Accuracy in Media award for accurate reporting.

In the several deposition sessions before this United States Magistrate John Rees's testimony has been fully consistent with the description of his journalistic background and activities as stated in his affidavit. The Magistrate fully agrees with counsel for the defendants that the protections which the First Amendment extends to newsgathering activities are not restricted to those who identify themselves as journalists by education, employment or other such criteria, counsel for the defendants appropriately observing that under the criteria advanced by the plaintiff, Sinclair Lewis, Mark Twain and H.L. Mencken would apparently not qualify for the protections of the reporter's or journalist's privilege. The Magistrate is of the view that the privilege is not limited to the writers of large established newspapers and media enterprises but is equally applicable to the sole publisher of a newsletter or other writing or paper distributed to the public to inform, to comment, or to criticize, albeit such a publication may be unpopular in the eyes of many of its potential readers.

■ In this case we need not resolve the question whether one who mimeographs a letter on one occasion and sends copies to 87 individuals would be a journalist,[1] a

---

1. In the course of deposition John Rees has testified that the distribution list for the *Information Digest* consists of 87 individuals at the present time.

hypothetical posed by counsel for plaintiff during oral argument, for here there is evidence of ongoing publishing and distribution of the *Information Digest* for many years and recognition of John Rees as a journalist by others as reflected in the quoted paragraph from his affidavit. We need not now resolve the question as to the location of the "bright-line" which separates those who are not journalists from those who are, for on the facts of this case developed thus far, John Rees more than qualifies to be treated as a journalist.

In this case counsel for the plaintiff have urged that the identity of the confidential source is highly relevant to the plaintiff's case-in-chief. Counsel have stated that John Rees in his affidavit and in his deposition testimony has asserted that his sources for the statement that Ken Duggan introduced Lyndon LaRouche and his follower, Scott Thompson, to Willis Carto, the principal behind the operations Liberty Lobby, Inc., were former LaRouche associate Gregory Rose and a confidential source "who, at that time, was a member of the LaRouche organization, acting at the direction of the FBI." (Quote from page 12 of the Affidavit of John Rees of December 24, 1984).[2] Counsel for plaintiff assert that based on John Rees's own testimony during the deposition sessions before the Magistrate, the credibility of Gregory Rose as a source and the veracity and good faith of John Rees's claimed reliance on him as a basis for the statement has been irrevocably impeached. Proceeding from this premise, counsel for the plaintiff argue in their memorandum:

> Thus, the only source for the statement is the claimed confidential informant, on which Mr. Rees, according to his own testimony and affidavit, relied upon as a "principal source." It is plaintiffs' (sic) contention that the purported source either does not exist or, if he or she does exist, would contradict Mr. Rees's testimony regarding him or her. Thus, knowledge of the identity of the

source on which Mr. Rees relied in writing the defamation is central both to the issue of truth or falsity and the issue of Mr. Rees's malice.

Counsel for the plaintiff further argue in their memorandum:

> The defendant Rees now hopes to shield the identity of the source from discovery by waiving reliance at trial on this source, although he admittedly relied on this source in writing the defamatory statement. However, this attempt must fail because, unlike the factual situation in *Dowd v. Calabrese, supra,* 577 F.Supp. at 244, the claimed source is not relevant to Mr. Rees's defense but to plaintiffs' (sic) claims of falsity and malice.

 While these arguments have strong superficial appeal, close analysis within the factual context of this case requires that they be rejected. First, the statement at issue is but one of numerous statements in the article at issue alleged to be defamatory concerning Liberty Lobby, Inc.'s alleged support and close relationship with LaRouche's various organizations. Thus, this one singular statement does not go to the heart of the case nor is it central to the issue of the alleged defamation. The information concerning the alleged relationship between Liberty Lobby, Inc. and the LaRouche organizations did not just come solely from this one confidential source. Thus, this case is to be distinguished from cases such as *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, *modified,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Carey v. Hume,* 492 F.2d 631 (D.C.Cir.), *appeal dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974) and *Garland v. Torre,* 259 F.2d 545 (2d Cir.) *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), where the confidential source was allegedly the sole basis for the statement which was at the heart of the libel case. Here the statement is but one statement among nu-

---

**2.** At the deposition session of June 4, 1986 John Rees professed to remember the name of a third individual for the information in question, whom he never previously had mentioned. The name of that individual was given in the course of the deposition.

merous statements throughout the article concerning an alleged relationship between Liberty Lobby, Inc. and LaRouche's various organizations and further, the statement attributed to the confidential source is merely that Ken Duggan introduced Lyndon LaRouche and Scott Thompson to Willis Carto, an innocuous fact standing alone. What is at the heart of this case is whether Liberty Lobby, Inc. was an ally and supporter of the LaRouche organizations and in sympathy with their alleged philosophy in support of socialism and communism and their asserted anti-Semitic and racialistic attitudes and views.

This case is more akin to *Dowd v. Calabrese*, 577 F.Supp. 238 (D.D.C.1983), where the disclosure would go only to a facet of the case and, at most, would involve a collateral matter and result in cumulative evidence undermining the credibility of John Rees.[3] Counsel for John Rees during the deposition has offered to stipulate that Mr. Rees will not rely on the confidential source in his defense in this case as evidence of truth or lack of malice. The Magistrate, as the Court did in *Dowd v. Calabrese, supra,* 577 F.Supp. at 244, will direct that the defendant may not rely on the alleged confidential source at the trial of this case.

Further, the Magistrate is of the view that disclosure of the confidential source is not essential to the plaintiff's case-in-chief. The Magistrate is of the view that the plaintiff has sufficient other evidence suggesting fabrication, or at least reckless disregard of the truth based both on alternative sources and plaintiff's counsel's eliciting responses from both John Rees and Sheila Louise Rees, which as a matter of circumstantial evidence, will support arguments of malice, i.e. knowing falsity or reckless disregard of the truth. Counsel for the plaintiff has astutely, during the

depositions of the defendants, probed their editorial processes and their state of mind with reference to the research, writing and publishing of the two articles at issue in this case, as he was entitled to do under *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

The Magistrate also notes, with reference to the many other statements of an alleged supportive relationship between Liberty Lobby, Inc. and the LaRouche organizations, John Rees's affidavit of December 24, 1984 revealed numerous names of individuals who purportedly had information about the alleged relationship. From the affidavit and the prior deposition testimony of John Rees, there appears to be still alive at least 10–12 such individuals, some of whom it appears counsel for the plaintiff have already interviewed. At the continued deposition session of June 4, 1986 and during argument by counsel on the issue of alternative sources, the Magistrate asked why these alternative sources had not been deposed previously, and counsel for the plaintiff responded that it is customary to complete the deposition of the defendant or defendants first, and counsel had been frustrated in this endeavor by the delaying tactics of the defendants and their counsel and their claims of privileges, which had led to the deposition sessions being conducted before the Magistrate. While the Magistrate finds this explanation reasonable, it is not sufficient to override a valid claim under the First Amendment to protect confidential sources. Where alternative sources exist, they must be pursued first before the court will require disclosure of a confidential source. As our Court of Appeals stated in *Zerilli v. Smith,* 656 F.2d 705, 713 (D.C.Cir.1981), a plaintiff must exhaust every reasonable alternative source of information first. *See also, Car-*

---

**3.** A mere claim that a confidential source does not exist, or if produced, will dispute the defendant journalist as to the information furnished, is not enough to require disclosure. In any case, such a development would, of course, most certainly undermine the credibility of the reporter and would impugn the reporter's claim of good faith. But such a result is not enough

to require disclosure. Such an approach would, in effect, destroy the qualified First Amendment privilege, for in every case, the alleged confidential source could impeach the reporter or journalist. More must be shown than mere potential for impeachment and erosion of credibility. More than mere speculation or supposition must be shown.

ey v. Hume, 492 F.2d at 639, where the Court of Appeals suggested that as many as 60 depositions might be a reasonable alternative. *See also Dowd v. Calabrese,* 577 F.Supp. 238, 245 (D.D.C.1983); *Liberty Lobby, Inc. v. Anderson,* 96 F.R.D. 10, 12 n. 2 (D.D.C.1982). Of course, it would appear that this case would not require such an exhaustive exercise.

Thus, in conclusion, the foregoing judicial precedent requires, in order to compel the disclosure of the identity of a confidential source of a journalist or reporter, in balancing the interests involved under *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), 1) the information be relevant, 2) the information can not be obtained by alternative means, and 3) there is a compelling need for the information in that it is crucial to the plaintiff's case, and without it, the reporter or journalist would be effectively shielded from liability. The old Fifth Circuit had described the test perhaps in even tighter language as follows:

> Before receipt of such information the plaintiff must show: substantial evidence that the challenged statement was published and is both factually untrue and defamatory; that reasonable efforts to discover the information from alternative sources have been made and that no other reasonable source is available; and that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.

*Miller v. Transamerican Press, Inc.,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). *See also LaRouche v. National Broadcasting Co., Inc.* 780 F.2d 1134, 1139 (4th Cir.1986); *Laxalt v. McClatchy,* 622 F.Supp. 737, 749 (D.Nev.1985). In this case plaintiff has failed to meet the requirements of two components of the three-part test, i.e., it has not exhausted alternative sources and the disclosure is not compelling in that it goes to a matter at most collateral and only potentially of some impeachment value in further undermining the credibility of John Rees and Sheila Louise Rees in this case.

Based on the Magistrate's exposure to this case and hearing the depositions of both John Rees and Sheila Louise Rees, the two principals involved in the publication of the *Information Digest* and the two (2) articles involved in the case, one of March 30, 1984 and the other of March 8, 1985, it appears that the plaintiff already has substantial evidence to establish knowing falsity or reckless disregard of the truth, and pursuing these alternative sources would lead at this point in time only to cumulative evidence. Of course, the Magistrate does not intend to prejudge the merits of this case, but at argument on June 4, 1986 counsel for the plaintiff did acknowledge that he felt he had a *prima facie* case against the defendants. If the Magistrate is wrong in this assessment of the case, counsel can ask for a brief extension of the discovery completion date of June 6, 1986 by filing a motion to be acted on by the Court (Revercomb, J.) setting forth good cause for a brief extension of discovery and the names of those alternative source individuals they now wish to depose and a statement of the importance of their depositions at this stage of the case. In the absence of such a motion, discovery shall be deemed closed as of June 6, 1986 as to the liability issues in this case, and counsel shall proceed with the filing of dispositive motions, if any, and if such motions are denied, then they shall proceed with preparing this case for trial within the time frame previously established by the Court.

The foregoing analysis, reasons and application of judicial precedent are relied upon to support the oral ruling of the Magistrate from the bench on June 4, 1986 denying the motion to require the disclosure of the identity of the confidential source and upholding John Rees's claim of privilege. This Memorandum Opinion is in amplification of the reasons stated orally from the Bench at the time of the ruling.