**CHANNEL TWO TELEVISION COMPANY, Relator,**

v.

**The Honorable Charles A. DICKERSON, Judge of the 240th Judicial District Court of Fort Bend County, Texas, Respondent.**

**No. 01–86–0385–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1987.

Richard A. Sheehy, Cook, Davis & McFall, David B. Black, Black & Ewart, Houston, for relator.

James R. Moriarty, Russell H. McMains, Edwards, McMains & Constant, Randall W. Wilson, Susman, Godfrey & McGowan, Houston, for respondent.

Before DUGGAN, HOYT and LEVY, JJ.

## OPINION

HOYT, Justice.

In this original proceeding on writ of mandamus, Channel Two Television seeks to compel the trial judge, the Hon. Charles A. Dickerson, to vacate his order compelling production of material that Channel Two claims is covered by a qualified reporter's privilege. We conditionally grant the writ of mandamus.

This proceeding arises out of a lawsuit between Jack Fletcher and George Aubin, two former business partners. Fletcher sued Aubin, claiming that Aubin had made a number of misrepresentations to him concerning their business ventures. Fletcher also alleged that Aubin's negligent conduct caused the death of a very successful quarterhorse owned by them as one of their ventures. Aubin generally denied Fletcher's claims and filed a counterclaim alleging contract violations and torts by Fletcher.

Channel Two became aware of the lawsuit between the two and prepared and broadcasted an investigative report on the horse's death and the dispute between the two. When Aubin learned of the report, he caused a subpoena *duces tecum* to issue requiring a representative of Channel Two to appear at a deposition and to produce the following:

> Documents, notes, video-tape, film, and any other tangible documents relating or referring to George Aubin, Jack Fletcher, Brigand Silk (the racehorse), Mercury Savings Association of Texas, and Ben Milam Savings & Loan Association.

Channel Two filed a motion to quash the deposition and subpoena *duces tecum,* arguing that the materials subpoenaed by Aubin were protected by a qualified privilege that protects reporters' notes and other investigative materials. Channel Two claimed that the scope of the subpoena *duces tecum* included reporter's notes, scripts, and information not actually broadcast on the air. It maintained that Aubin did not need to look at the reporter's investigative materials because the alleged slanderous act by Aubin was contained in the broadcast itself, not the underlying materials. When the motion was denied, Channel Two filed this proceeding in this Court. Thereafter, Aubin filed suit for libel and slander against Channel Two and the reporter involved in the report.

In this mandamus action, Channel Two seeks to have this Court hold that the materials sought are subject to a reporter's privilege and thus are not subject to compelled disclosure.

■ The United States Supreme Court has held that a qualified privilege protects information that the press obtains by its investigations. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Since *Branzburg,* other courts have discussed more fully the chilling effect that discovery of the journalistic process would have on the uncovering of news. *See LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986); *U.S. v. Cuthbertson,* 630 F.2d 139, 147 (3rd Cir.1980), *cert.*

*denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981). A paramount public interest in the maintenance of a vigorous, aggressive, and independent press, capable of unfettered debate over controversial matters, is reflected in the courts' close scrutiny of any infringement on First Amendment protection. *Baker v. F & F Investment,* 470 F.2d 778, 782 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973) (citing *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). The protection afforded is not altered by the fact that the case pending is civil rather than criminal, *New York Times v. Sullivan,* 376 U.S. at 265, 84 S.Ct. at 718.

■ Texas law recognizes certain privileges established by our rules of procedure, Tex.R.Civ.P. 166b.3, and also a privilege based upon freedom of speech and of the press. Tex.Const. art. 1, sec. 8. Under our rules of procedure, before a privilege will be invoked to prevent the production of certain materials, the party claiming a privilege must assert it and affirmatively show that the materials sought qualifies for the privilege. *Peeples v. Hon. Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985). This affirmative showing can generally be accomplished by tendering the materials to the Court for an in-camera inspection. *Victoria Lloyds Insurance Co. v. Gayle,* 717 S.W.2d 166 (Tex.App.— Houston [1st Dist.] 1986, orig. pro.).

■ The questions of when to allow a qualified privilege protecting reporters and what showing is necessary to overcome it are not so clearly defined in our state law. Texas Const. art. 1, sec. 8 provides that "... no law shall ever be passed curtailing the liberty of speech or of the press." We interpret this to mean that once the privilege is asserted, the party seeking disclosure of the reporter's investigative materials and notes must demonstrate that there is a compelling and overriding need for the information. At a minimum, the litigant must make a clear and specific showing in the trial court that the information sought is: (1) highly material and relevant; (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other available sources. *United States v. Burke,* 700 F.2d 70, 76, 77 (2d Cir.1983), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7–8 (2nd Cir.1982) (per curiam), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Zerilli v. Smith,* 656 F.2d 705, 713– 715 (D.C.Cir.1981); *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 438 (10th Cir. 1977).

■ In this case, Aubin has issued a broad subpoena *duces tecum* asking for reporter's notes, outtakes, records, and other documents relating to the broadcast aired concerning the Aubin-Fletcher dispute. He presented no evidence at the hearing on the motion to quash other than a copy of the broadcast. There is no showing that the information sought fulfills the criteria we have previously set out, and the trial court therefore had an insufficient basis for ordering production of the requested material.

This is not to say that Aubin could not demonstrate that some of the designated material sought may be subject to disclosure. But unless the elements of the qualified privilege are established for each item sought, the presumption for each item must be in favor of First Amendment considerations.

The application for writ of mandamus is granted. We have no doubt that Judge Dickerson will vacate his order denying the motion to quash, and the Clerk of this Court will be directed to issue the writ of mandamus only in the event he fails to do so.

LEVY, J., concurs.

LEVY, Justice, concurring.

I agree with the majority's reasoning and disposition of the mandamus application, which vacates the trial judge's order compelling discovery, but because of the overriding importance of a free press, it seems appropriate to observe that Texas law grants protection, as well as does the federal constitution's First Amendment, from

compelled disclosure of information that the press obtains through its investigations.

When addressing the issue of a reporter's privilege *as a matter of state constitutional law,* we are not obligated to follow the U.S. Supreme Court's interpretation of the First Amendment. As the majority noted in *Branzberg v. Hayes,* 408 U.S. at 706, 92 S.Ct. at 2669 (1972):

> ... we are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute.

Our Texas Constitution's "free press" provision is thus not a mere shadow of the comparable First Amendment. No matter how eloquent or persuasive its analysis of the federal constitution may be, the United States Supreme Court will not presume that the Supreme Court of Texas (or lower Texas Courts) will modify its interpretation of Texas law whenever the U.S. Supreme Court interprets comparable federal law differently. If a state court judgment is premised on an adequate state ground, that ground must be presumed *independent* unless the *state* court suggests otherwise.[1]

Tex.Const. art. 1, sec. 8 is Texas's guarantee of freedom of the press. It provides:

> "... no law shall ever be passed curtailing the liberty of speech or of the press."

This language is sweeping, and deliberately so. In its application, I think it means that before a reporter can be ordered to turn over material acquired in the investigation and dissemination of a news story, the litigant seeking the information must show more than that the material be highly significant and relevant, necessary to his claim, and not available from other sources. The litigant should demonstrate the existence of a *compelling* need for the information, which should not be required to be predicated on economic interest alone.

A free press promotes, or ideally should promote, dissemination of the widest possible range of fact and opinion in an open society such as ours. To carry out its prescribed role effectively, the press must be relatively unrestrained in acquiring and compiling information, modified, inter alia, by the individual's rights to privacy and dignity. The likelihood or even possibility of court-ordered disclosure of confidential sources diminishes the flow of news by encouraging self-censorship by newsgatherers and by dissuading potential informants from divulging their information. *United States v. Caldwell,* 408 U.S. 665, 711, 720, 92 S.Ct. 2646, 2686, 2691, 33 L.Ed.2d 626 (1972) (Douglas, J., dissenting) (holding that a reporter should have an absolute privilege to withhold the identity of a source).

Applying this strict standard would involve minimal evidentiary loss, encourage the necessary flow of information, and, perhaps even more, strengthen the protection of important but confidential sources.

Thus, I fully concur in the majority opinion, adding this only for emphasis.

---

1. "[W]e will not review a judgment of a state court that rests on an adequate and independent state ground. Nor will we review one until the fact that it does not do so appears of record." *Herb v. Pitcairn,* 324 U.S. 117, 128, 65 S.Ct. 459, 464, 89 L.Ed. 789 (1945).