The DALLAS MORNING NEWS COMPANY, d/b/a The Dallas Morning News, A.H. Belo Corporation, David Hanners, David McLemore, and Gayle Reaves, Relators,

v.

Honorable Ricardo H. GARCIA, Respondent.

No. 04–91–00472–CV.

Court of Appeals of Texas, San Antonio.

Dec. 11, 1991.

676

Thomas G. Sharpe, Jr., Craig A. Stokes,
Kathryn M. Kase, Oppenheimer, Rosen-

berg, Kelleher, Luther H. Soules, III, Thomas Black, Soules & Wallace, San Antonio, James P. Wallace, Soules & Wallace, Austin, William D. Sims, Jr., Dallas, Jorge Rangel, Rangel & Chriss, Corpus Christi, David C. Garza, Brownsville, for relators.

Robert Anderson, Jr., Andrew J. Lehrman, David T. Bright, Sorrell, Anderson, Lehrman, Wanner & Thomas, Corpus Christi, for respondent.

Before BUTTS, CHAPA and PEEPLES, JJ.

## ON RELATORS' PETITION FOR WRIT OF MANDAMUS

BUTTS, Justice.

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

This original mandamus proceeding arises out of two libel actions against relators.[1] Respondent, Ricardo H. Garcia, judge of the 229th District Court of Starr County, has ordered relators to disclose to the libel plaintiffs the identity of the sources used in the preparation of the articles. Relators have asked for a writ of mandamus directing Judge Garcia to rescind his order compelling disclosure. They argue that he has abused his discretion because the identities of their sources are confidential and are protected from compelled disclosure by the journalist's privilege. We conditionally grant the writ of mandamus.

The libel actions are based on a series of news articles entitled, "Texas' Little Columbia," investigating illegal drug trafficking in Starr and Hidalgo Counties. These counties border Mexico along the Rio Grande River. The series consisted of 20 articles that ran in the Morning News October 14 through 19, 1990. Plaintiffs complain that they were libeled by the nine articles in the series published on October 14, 15, and 17.

The first libel action, cause number 8845, was brought by the parents of Eloy Garza, Jr. as his next friends.[2] Garza claims he was libeled in an article published on October 15, 1990. This article attempted to show how the drug trade and drug money had corrupted various government officials in Starr and Hidalgo counties. One sentence in the article falsely stated that Eloy Garza, Jr. had pleaded guilty to possession of small amounts of cocaine and marijuana. His father, Eloy Garza, Sr., is a county commissioner in Starr County. Discovering that the guilty party was another Eloy Garza, Jr., and not the commissioner's son, who was six years old at the time, the Morning News printed a retraction.

The plaintiff in cause number 8846, the second libel action, is Gene Falcon, Sheriff of Starr County. One article in the series, published October 17, 1990 (the Falcon article), featured Sheriff Falcon. Falcon claims that this article falsely accused him by innuendo and by direct allegation of having been involved with drug trafficking and other illegal activity. He further claims that the articles published on October 14 and 15 libeled him by accusing him of the commission of criminal acts.

The Falcon article accused the sheriff of being friends with drug dealers and other criminals, of making little effort to combat drug trafficking in the county, of associating with an alleged drug kingpin, and of rerouting patrols to let drug shipments pass through the county unmolested. These accusations were attributed to sources such as "observers," "local residents," "ex-drug dealers," and "former deputies." The article mentioned that Falcon had been charged in Mexico for the drug-related murder of a hospitalized Mexican prisoner, and that Mexican authorities had issued a warrant for his arrest. The article also charged that the sheriff had purchased a large home in Starr County for less than its appraised value, and that the

---

1.  Relators are the Dallas Morning News Company, the publisher of the Dallas Morning News; A.H. Belo Corporation, owner of the Dallas Morning News Company; and David Hanners, David McLemore, and Gayle Reaves, the three reporters who authored the newspaper articles at issue in the libel actions.

2.  The Garza plaintiffs will sometimes be referred to as "Garza."

home had been owned previously by the wife of Ramon Garcia Rodriguez, who was identified in the article as "an alleged drug kingpin and federal fugitive."

Relators pleaded that the articles are true, that they were not published with actual malice, that they are not actionable because they are statements of opinion, that they are privileged as fair comment or criticism under TEX.CIV.PRAC. & REM.CODE ANN. § 73.002(b)(2) (Vernon 1986), that they are privileged because they are neutral reporting by responsible persons or organizations on matters of legitimate public interest, and that plaintiffs have not been damaged.

Plaintiffs filed a series of interrogatories and requests for production in which they sought the names of all third-party sources that were interviewed, or from whom statements were obtained or relied upon in preparing the nine articles. Relators assert that they have answered each interrogatory except those that would lead to disclosure of their confidential sources. They also claim that they have produced all requested documentary information, except that the names of their confidential sources have been expunged from the documents provided.

Plaintiffs filed motions to compel responses to their interrogatories and requests for production. In response, relators asserted that the information requested was protected by the journalist's privilege against forced disclosure of confidential sources.

A hearing was held on the motions to compel. In each case the court found that relators failed to prove the existence of their privilege; that the identities of the confidential sources for the articles in question (October 14, 15, and 17 in the Falcon case, and October 15 in the Garza case) are highly relevant and material, and necessary and critical to the trial of plaintiffs' cases; that there are no other means available to determine the confidential sources; and that plaintiffs have exhausted all available means to determine the identity of the sources.

In the Falcon case, respondent granted plaintiff's motion to compel in each particular, except one. Relators were not ordered to disclose confidential sources who are former Starr County sheriff's deputies because the court found that Falcon had not exhausted all available means to determine their identities. The Garza motion was granted in its entirety. Except for the former deputies, relators were ordered to disclose their sources for all nine articles.

## I. THE JOURNALIST'S PRIVILEGE

In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) the Supreme Court held that a journalist does not have an absolute privilege under the First Amendment to refuse to disclose confidential sources to a grand jury conducting a criminal investigation. The court, however, explicitly recognized that news gathering is not without first amendment protection. 408 U.S. at 707, 92 S.Ct. at 2670. "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." *Id.* at 681, 92 S.Ct. at 2656. Since *Branzburg*, the courts have recognized a qualified First Amendment privilege against compelled disclosure of confidential information possessed by a journalist. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir.), *modified on rehearing*, 628 F.2d 932 (5th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).

The qualified privilege is also grounded in TEX.CONST. art. I, § 8, the free speech and press clause. *Channel Two Television Co. v. Dickerson*, 725 S.W.2d 470, 472 (Tex. App.—Houston [1st Dist.] 1987, no writ). Given the overriding importance to our society of a free press, we feel it is important to emphasize that our decision today is based on both the First Amendment of the federal constitution and on article I, section 8 of our own constitution. *See Channel Two*, 725 S.W.2d at 472–73 (Levy, J., concurring).

Falcon's attorney admitted the existence of the qualified privilege at the hearing on the motion to compel. At issue is the application of the privilege to the

facts and circumstances of this case. The courts will look to the facts on a case-by-case basis in the course of balancing the need for the testimony in question against the claims of the news gatherer that the public's right to know is impaired. *Carey v. Hume,* 492 F.2d 631, 636 (D.C.Cir.), *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974). *See also Branzburg,* 408 U.S. at 710, 92 S.Ct. at 2671 (Powell, J., concurring). When striking this balance, we are mindful of the preferred position of the First Amendment and the importance of a vigorous and unfettered press. *Zerilli v. Smith,* 656 F.2d 705, 712 (D.C.Cir.1981). We are also aware that the duty of a witness to testify in a court of law, and the correlative right of a litigant to obtain judicial compulsion of that testimony, are essential to the fabric of our society. *Garland v. Torre,* 259 F.2d 545, 548–49 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958).

## II. PROPRIETY OF MANDAMUS

■ Mandamus is an appropriate remedy when a party is harmed by an order requiring the disclosure of privileged material. *West v. Solito,* 563 S.W.2d 240, 244 (Tex. 1978). A trial court order that compels disclosure of privileged matters constitutes an abuse of discretion which may be corrected by mandamus. *Wal–Mart Stores, Inc. v. Street,* 754 S.W.2d 153, 155 (Tex. 1988). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). "In order to find an abuse of discretion, the reviewing court must conclude that the facts and circumstances of the case extinguish any discretion in the matter." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985).

## III. RELATORS' BURDEN

■ The burden of proof to establish the existence of a privilege rests on the party asserting it. *Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 648–49 (Tex.1985). The party resisting discovery must produce evidence supporting the particular privilege, immunity or exclusion claimed. TEX.R.CIV.P. 166b(4); *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986); *Channel Two,* 725 S.W.2d at 472. The evidence may be in the form of affidavits or live testimony. Rule 166b(4).

■ Relators have met this burden. Their proof consisted, in part, of the affidavits of the three reporters who authored the articles complained of. They stated in their affidavits that they are reporters employed by the Morning News, and that in the course of preparing the articles they assured certain news sources that they would keep their identities and certain information they provided confidential.[3]

Plaintiffs cite language in *Channel Two* in arguing that relators had the burden to tender the information sought to be protected to the trial court for an *in camera* inspection. Relators did not do this. *Channel Two* mentions this requirement, but does not indicate whether materials were produced in that case. 725 S.W.2d at 472.

■ An *in camera* inspection was not required. When a party seeks to exclude materials from discovery on the basis of the invasion of constitutional rights, an *in camera* inspection is not necessary. TEX. R.CIV.P. 166b(4); *Hoffman v. Fifth Court of Appeals,* 756 S.W.2d 723, 723 (Tex.1988). Further, plaintiffs' purpose in these proceedings has been to obtain the names of relators' confidential sources. A mere list of names would not help respondent deter-

**3.** The reporters also averred that the articles were researched for approximately a year prior to publication; that they were not based solely on the confidential sources, but were also based on numerous "on-the-record" sources and approximately 20,000 pages of documents that have been identified and produced at discovery; that they believe that many of the confidential sources fear retaliation against them if their identities are disclosed; that the only documentary information not produced is that for which relators claim confidential source, attorney-client, and attorney work-product privileges; and that they believed the articles to be true at the time they were published.

mine whether those persons were the confidential sources relied upon by the reporters. The issue is not who the sources are, but whether disclosure of their identities will be compelled.

## IV. PLAINTIFFS' BURDEN

■ Once the journalists' privilege has been asserted, the burden of producing substantial evidence sufficient to overcome the privilege shifts to the party seeking discovery. *In re Selcraig,* 705 F.2d 789, 792 (5th Cir.1983); *Channel Two,* 725 S.W.2d at 472. Plaintiffs' attorneys admitted at oral submission that the burden had shifted to them.

■ Because the journalist's privilege is a qualified one, it can be overcome in certain circumstances. It can be overcome in libel cases if the party who seeks disclosure establishes by substantial evidence (1) that the statement attributed to the informant was published and is false and defamatory; (2) that reasonable efforts have been made to learn the informant's identity by alternative means, but that no other reasonable means is available; and (3) that knowledge of the informant's identity is necessary or critical to proper preparation and presentation of the case. *Selcraig,* 705 F.2d at 792; *Miller,* 628 F.2d at 932. This last element is sometimes expressed in terms of whether there is a "compelling interest" in the information. *LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir.), *cert. denied,* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986); *Miller,* 621 F.2d at 726.

Plaintiffs again turn to *Channel Two* to support their argument that they are not required to offer substantial evidence of the falsity of the statements. But *Channel Two* does not mention that requirement. That case was decided in favor of the privilege based on the plaintiff's failure to make a showing that the information sought met the other criteria of the test. 725 S.W.2d at 472.

Several cases, including *Channel Two,* 725 S.W.2d at 472, require a showing that the identities of the confidential sources are "highly material and relevant." *Chan-*

*nel Two* includes this requirement in place of the "falsity" requirement. In setting out its three-prong test, *Channel Two* relies on the initial *Miller* opinion. *Miller,* 621 F.2d at 726. On rehearing, the Fifth Circuit modified the test set out in its initial opinion by deleting the relevancy requirement and adding the "substantial evidence of falsity" requirement. *Miller,* 628 F.2d at 932. The Fifth Circuit has since reaffirmed the modified *Miller* test. *Selcraig,* 705 F.2d at 792. That is the test we adopt today. We believe it strikes the proper balance between the obligation of all citizens to give relevant testimony and the freedom of the press as guaranteed in the federal and Texas constitutions. *See Branzburg,* 408 U.S. at 710, 92 S.Ct. at 2671 (Powell, J., concurring).

The deletion of "relevancy" as a separate requirement does not significantly alter the plaintiff's burden of proof. "Relevancy" is no more than the standard established in *Carey* that the sources' identities must "go to the heart" of the plaintiff's libel claim. 492 F.2d at 636. In other words, the information sought must be "critical" to the plaintiff's case. *Id.* at 637. The relevancy requirement adds nothing to the test that is not already encompassed in the "necessary or critical" element. If the information is necessary or critical to the plaintiff's case, it follows that it is also highly material and relevant. Significantly, *Carey* discussed these elements together, holding that the information sought must go to the heart of the plaintiff's libel action, and finding that the identities of the defendants' sources in that case were critical to the plaintiff's claim. 492 F.2d at 636–37.

■ Plaintiffs argue that at the most their burden is satisfied by a "minimal" showing that their suit is neither frivolous, nor manufactured as a pretense for a discovery request. They cite *Zerilli,* and *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597 (1st Cir.1980). They apparently seize on the use of the word "frivolous" in those cases as an indication that the proof required is frivolous, in the sense of "trivial" or "inconsequential." "Frivolous" does not describe the

amount of proof required, but rather the substance or nature of the suit. The burden to refute the "frivolousness" of a libel suit is neither a minimal nor a trivial one; it requires the plaintiff to establish by substantial evidence that the informants' statements are false and defamatory.

In *Zerilli*, the court of appeals affirmed the district court's denial of the appellants' motion to compel discovery. While the opinion noted in passing that the appellants' suit was not frivolous, the case turned on the fact that the appellants had not exhausted possible alternative sources of the information. 656 F.2d at 714.

*Bruno & Stillman* indicates that the plaintiff must show, as a threshold matter, that its "claim is not frivolous, a pretense for using discovery powers in a fishing expedition." 633 F.2d at 597. It then provides some guidelines for making this showing. The plaintiff must show that it can raise jury issues on the essential elements of its case. For example, the falsity of the news gatherer's charges should be drawn into question and established as a jury issue before discovery of the confidential sources will be compelled. *Id.*

This principle is further illustrated in *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). Disclosure will not be compelled until there is a "concrete demonstration" that the identity of the sources will lead to persuasive evidence on the issue of malice. 464 F.2d at 994. If, during the course of discovery, the plaintiff uncovers *substantial evidence* tending to show that the published assertions are so inherently improbable or are untrue, the reasons favoring compulsory disclosure are more compelling. *Id.*

The requirement that substantial evidence of falsity must be shown is designed as a threshold criterion in order to prevent forced disclosure of confidential sources based on a mere pleading that the plaintiff has been injured by an untrue statement. *See Miller*, 628 F.2d at 932.

The point of principal importance is that there must be a showing of cognizable prejudice before the failure to permit examination of anonymous news sources can rise to the level of error. Mere speculation or conjecture about the fruits of such examination simply will not suffice.

*Cervantes*, 464 F.2d at 994.

The courts in journalist privilege cases recognize the heavy burden a public official has to meet in order to prove libel. Plaintiffs in those cases must prove "actual malice"—that the statement was made with knowledge of its falsity or with reckless disregard of whether it was false or not. *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). Frequently, proof of actual malice will depend on knowing the informant's identity, because the plaintiff will have to show that the informant was unreliable and that the journalist failed to take adequate steps verify his story. *Zerilli*, 656 F.2d at 714. *See also, Herbert v. Lando*, 441 U.S. 153, 170, 174, 99 S.Ct. 1635, 1645, 1648, 60 L.Ed.2d 115 (1979) (defamation case involving disclosure of defendants' "editorial processes"); *Carey*, 492 F.2d at 634. Even Garza, who is not a public figure, must meet the *Sullivan* standard in order to recover the exemplary damages he seeks. *Gertz v. Welch*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974).

Yet the courts are also jealous guardians of the press freedoms guaranteed in the First Amendment.

In the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege. Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished. Unless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters.

*Zerilli*, 656 F.2d at 712.[4] It is the citizenry's interest, after all, in the full and free

---

**4.** Allowing perfunctory invasion of confidential sources would promote a chilling effect that

would impede the free flow of information from sources, through the news gatherers as

flow of information and ideas that is the basis for the Constitution's protection of the press. "Enlightened choice by an informed citizenry is the basic ideal upon which an open society is premised, and a free press is thus indispensable to a free society." *Branzburg,* 408 U.S. at 726, 92 S.Ct. at 2672 (Stewart, J., dissenting) (footnote omitted). The guarantee of a free press is "not for the benefit of the press so much as for the benefit of all of us." *Time, Inc. v. Hill,* 385 U.S. 374, 389, 87 S.Ct. 534, 543, 17 L.Ed.2d 456 (1967).

The burden imposed in *Bruno & Stillman, Cervantes,* and *Miller* goes beyond a "minimal" showing that the libel suit is not frivolous or manufactured. If the plaintiff cannot at a minimum produce enough evidence to establish the probable falsity of the defendant's statements, he may not, at the expense of the defendant's constitutional rights, conduct a fishing expedition through its confidential sources in an effort to contrive such a claim.[5]

### V. HAVE PLAINTIFFS MET THEIR BURDEN?

*A. Substantial evidence of falsity.*

Falcon testified at the hearing on the motion to compel that the statements attributed to confidential sources in the Falcon article are, in his opinion, false. The article contained a statement that a Mexican judge had raised some questions regarding the legality of the dismissal of murder charges against Falcon in Mexico. Falcon testified that this statement was false. He also testified that he was not aware that one of the record owners of the house he purchased was the wife of Ramon Garcia Rodriguez, the alleged drug kingpin. This is all the proof he offered. It should be noted that the Mexican judge was identified in the article, and that none of the story relating to the purchase of the home was attributed to confidential sources.

Relators have included in the record the documentary evidence they produced at discovery. The evidence includes banking and real estate documents relating to Falcon's purchase of the home, and an interview with the Mexican judge. Falcon admits that he was a suspect in the murder and that murder charges were filed against him in Mexico. Sources specifically connecting Falcon with illegal drug trafficking are identified in the documents.

That Falcon's proof falls well short of substantial evidence of falsity can be illustrated by comparing his proof with that offered by the plaintiff in *Cervantes.* In that case, the mayor of St. Louis sued *Life* magazine contending that four paragraphs of an 87 paragraph article libeled him by asserting that he had personal ties to organized crime. Mayor Cervantes "undertook extensive pretrial discovery," including the deposition of the reporter who gathered the information that formed the basis for most of the story. 464 F.2d at 988. When the reporter refused to disclose his sources, the mayor filed a motion to compel disclosure. *Life* responded by moving for summary judgment on the grounds that it had acted in good faith in publishing the article and that it believed the statements to be true. The district court granted the motion for summary judgment.

To rebut substantial evidence submitted by *Life* documenting that the information

---

proxies for the public, and ultimately to the public itself. As the court said in *Sullivan* in formulating its actual malice test, "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court, or fear of the expense of having to do so." 376 U.S. at 279, 84 S.Ct. at 725. *See also Channel Two,* 725 S.W.2d at 473 (Levy, J., concurring).

5. Even if the plaintiff can meet this demand, it may be that the defendant can resist disclosure by coming forward with its own evidence to establish that it made a careful and comprehensive effort to corroborate independently the information provided by the informant, and that on that basis the defendant believed the information to be true. *See Cervantes,* 464 F.2d at 994. If the defendant can make such a showing, the need for the informant's identity would be less compelling because the informant's reliability would be less at issue. *See* Note, *Reporters and Their Sources,* 80 YALE L.J. 317, 362 (1970).

for the article was carefully compiled and verified, the mayor presented "little more than a series of self-serving affidavits ... together with other evidentiary materials which framed but a minimal assault on the truth of the matters contained in the four paragraphs." 464 F.2d at 994. The mayor apparently put on more proof than Falcon, yet his motion to compel disclosure was not even reached. Rather, *Life*'s motion for summary judgment was affirmed.

Falcon's self-serving opinion testimony does not meet the requirement of substantial evidence. Indeed, it is even difficult to stretch it to meet the "minimal" burden plaintiffs set for themselves. Every plaintiff in every libel case will testify that he or she believes the published statements are false. If this were the only requirement, the qualified privilege would be no privilege at all; anyone could overcome it merely by filing a libel suit and expressing the opinion that the defendant's statements were false.

Garza's case is different, however, in that relators have admitted the falsity of the sentence mentioning Garza, Jr. The substantial evidence of falsity test has been met. Even for Garza, however, the inquiry is not at an end. Like Falcon, before he can obtain an order compelling discovery, he must also meet the two remaining requirements of his burden of proof.

### B. Exhaustion of alternative sources of information.

■ Falcon testified that he has made inquiries among different people but has been unsuccessful in locating the confidential sources. Falcon's attorney testified that Falcon had made "substantial" efforts to identify the sources—he "talked appar-

ently to people and made inquiries." He said Falcon was unable to contact the presumed sources because he could not confirm that they were the confidential sources. The attorney indicated that he considered it futile to attempt to depose presumed sources until it is known for sure that they are the confidential sources relied upon by relators.

Falcon's attorney admitted that relators have furnished at least 48 names of persons having knowledge of relevant facts. Relators have also included in the record a vast amount of documentary evidence that they produced at discovery. Further, sources linking Falcon to illegal drug trafficking were identified in those documents. In the face of this wealth of information, Falcon has taken only one deposition, that of Gayle Reaves. Ms. Reaves continually refused to identify her sources.[6]

Falcon's attorney testified that the attorneys for both sides had agreed to depose the reporters before anyone else. Such an agreement, however, has been held insufficient to override the First Amendment's protection of confidential sources. *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 22 (D.D.C.1986). In any event, they deposed only one reporter before they filed their motion to compel.

It is apparent that Falcon abandoned any attempts to discover alternative sources in favor of his motion to compel. Perhaps the most damning testimony came from Falcon's counsel when he was being cross-examined about efforts made to locate and depose confidential sources. He said, "I made the decision as an attorney for Sheriff Falcon to wait and find out who the confidential sources are when the newspaper discloses it." This court will not sanc-

---

**6.** In *Carey,* the court intimated that requiring 60 depositions to be taken was not overly burdensome. 492 F.2d at 639. Apparently, the 48 names disclosed by relators do not include those of the confidential sources. It is not unreasonable to suppose, however, that if plaintiffs were to depose at least some of these persons, they would have a much better understanding of the information used by relators in the preparation of the articles. They might also be led to the identity of confidential sources.

We do not suggest that these persons will be adequate substitutes for the confidential sources. They may or may not. Nor do we suggest, as the concurring and dissenting justice concludes, that all 48 of these persons must be deposed before the disclosure of confidential sources will be compelled. We only note that plaintiffs have failed to investigate another possible store of information provided them by relators.

tion the use of a motion to compel disclosure of confidential sources as a preliminary discovery matter rather than as a "last resort." *See Carey,* 492 F.2d at 638 (compelled disclosure of confidential sources is "normally the end, and not the beginning, of the inquiry."); *Mize v. McGraw–Hill, Inc.,* 82 F.R.D. 475, 478 (S.D.Tex.1979).

■ Garza's attorney testified that in an effort to locate the source of the statement about Garza, Jr., he examined the criminal record of the Eloy Garza, Jr. who had pleaded guilty. He also talked to the persons who were involved in the case of the other Garza, Jr.—the district attorney, the defense attorney, the officers involved in the arrest, and the probation officer. None admitted to being the source.

It would seem that David Hanners, author of the sentence about Garza, Jr., would be another logical source of information. Hanners, however, has not been deposed. *See LaRouche,* 780 F.2d at 1139. Garza's attorney indicated that he believed Hanners would also refuse to answer any questions regarding the identity of confidential sources. The attorney's belief is not substantial evidence that Hanners would refuse to answer, or would refuse to provide information that would lead to discovery of the identity of the source.

Garza's attorney admitted that the only statement Garza is complaining of is the one in the October 15 article accusing Garza, Jr. of possession of illegal drugs. He asserted that he nevertheless is seeking the identity of all sources that contributed to any part of that particular article. He has not offered proof of any attempt to exhaust alternative means of locating these sources.

We conclude that Falcon's attempts to exhaust alternative sources of information were inadequate. His primary proof comes from the testimony of his attorney. The only other evidence is Falcon's testimony that he had talked to people and made inquiries. This is not substantial evidence of exhaustion of all alternative means. Aside from his deposition of Ms. Reaves, Falcon has not shown that he has made any effort to use the information provided by relators.[7]

Garza, on the other hand, has made a more exhaustive effort to locate the source who identified him as the person who pleaded guilty to possession of illegal drugs. We cannot hold that his investigation is complete, however, until he has at least taken the obvious step of deposing the author of the allegedly libelous sentence. We reiterate, however, that Garza has offered no evidence that he has exhausted alternative means of discovering the identities of the remaining sources for the article that mentions him.

## C. *Material or critical need for the information.*

Plaintiffs sought disclosure of all sources for all nine articles even though only one article—and possibly a paragraph in another article—focused on Falcon, and only one sentence mentioned Garza, Jr. The reporters stated in their affidavits that many sources provided information wholly unrelated to Falcon, and that only one confidential source provided information about the statement relating to Garza, Jr. Yet the orders in question compel disclosure of every confidential source who contributed to each of the nine articles, with no attempt to distinguish sources who provided information about plaintiffs and sources who had nothing at all to say about them.

■ The matters attributable to the confidential source must be material and critical to the plaintiff's case; that is, they must go to the heart of the case and be central to the issue of the alleged def-

7. The concurring and dissenting justice agrees that the forced disclosure of sources in the Falcon case was in error, and yet he suggests that Falcon should not be put to the trouble and expense of making even a cursory investigation of the information provided by relators during discovery. He apparently subscribes to plaintiffs' argument that "unless they first tell us who the sources are, we can never find them for ourselves." The acceptance of this argument would effectively eliminate the requirement that plaintiffs must make a reasonable effort to exhaust possible alternative sources of the information they seek.

amation. *Carey,* 492 F.2d at 636; *Garland,* 259 F.2d at 550; *Liberty Lobby,* 111 F.R.D. at 21–22. Disclosure of confidential sources whose testimony would go only to a collateral issue, or to one not essential to the plaintiff's case-in-chief will not be permitted. *Dowd v. Calabrese,* 577 F.Supp. 238, 245 (D.D.C.1983); *Liberty Lobby,* 111 F.R.D. at 22. Plaintiffs have not shown a compelling need for the disclosure of the confidential sources who provided no information about them. They have not demonstrated that this information is highly material and relevant, or necessary or critical to their libel claims.

Garza sought the names of all the sources for the article that mentioned Garza in order to determine whether the reporters were generally responsible in their reliance on these sources in writing that article. But the issue in Garza's case is not whether the reporters are generally responsible and careful, but whether Hanners was responsible and careful in relying on the source who provided the particular information that allegedly libeled Garza. Garza has not shown a critical need for these collateral sources.

In addition, Falcon has not shown by substantial evidence a material or critical need for the identities of the particular sources who provided information about him. It may be that he can establish a case for actual malice based on the 48 disclosed but undeposed sources, or on the other information provided by relators during discovery. *See Miller,* 621 F.2d at 726 ("it will often be possible to establish malice or lack of malice without disclosure of the identity of the informant."). Even if he cannot, he must first make the attempt before disclosure of confidential sources will be compelled. *Liberty Lobby,* 111 F.R.D. at 22. Compelled disclosure is "a last resort after pursuit of other opportunities has failed." *Carey,* 492 F.2d at 639.

Again, we reach a different determination in the Garza case. Many of the cases ordering disclosure have done so on the basis that the defendants' only source for the allegedly libelous statements is the informant. *Miller,* 621 F.2d at 726; *Carey,*

492 F.2d at 637; *Garland,* 259 F.2d at 547. Hanners got his information about Garza, Jr. from the court records and from one confidential source. It is crucial to Garza's proof of malice to interview the source to determine whether Hanners was reasonable in his reliance on the source.

## VI. CONCLUSION

Falcon has failed to offer substantial proof of the falsity of the allegations attributable to confidential sources. Relators admit, however, that the statement regarding Garza, Jr. was false.

Neither of the plaintiffs has shown that he has exhausted all alternative means of learning the identities of the sources. Falcon has made little effort at all, choosing to rely on his motion to compel. Garza has neglected to depose the author of the allegedly libelous statement.

Neither plaintiff has made a showing of material or critical need for the identities of collateral sources—those sources who did not provide information about them. Nor can we say at this point that Falcon has shown a material or critical need even for the identities of the sources who provide information about him. He has not demonstrated that he is unable to make his case without the identities of these sources. Garza, however, has shown a critical need, but only for the one source who provided information relating to the statement he alleges has libeled him.

We do not say that plaintiffs will never be entitled to disclosure of the identities of the confidential sources, only that they have so far failed to make a case for disclosure. But we also reiterate and emphasize that disclosure of confidential sources will be compelled only as a last resort after pursuit of all other opportunities has failed.

In light of plaintiffs' failure to meet their burden in support of disclosure, we conclude that the trial court abused its discretion by ordering disclosure of the identities of the confidential sources. The petition for writ of mandamus is conditionally granted. We are confident that Judge Garcia will vacate his September 5, 1991 orders granting plaintiffs' motions to compel dis-

covery in cause numbers 8845 and 8846. The writ will issue only if he fails to do so.

CHAPA, Justice, concurring and dissenting.

The majority has granted a writ of mandamus directing Judge Garcia to rescind his two orders compelling disclosure on behalf of both Sheriff Falcon and Eloy Garza, Jr. In doing so, the majority has concluded that the trial court abused its discretion in issuing both orders. I concur in the result as to the order involving Sheriff Falcon, but respectfully dissent as to the order involving Eloy Garza, Jr.

In my view, the issue before this court is not whether there was sufficient evidence before the trial court to justify its orders of disclosure as apparently perceived by the majority, but simply whether the trial court abused its discretion.

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). Rather, a trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Downer*, 701 S.W.2d at 241–43; *Cessna Aircraft Co.*, 665 S.W.2d at 443; *Bush v. Vela*, 535 S.W.2d 803, 805 (Tex.Civ.App.—Corpus Christi 1976, no writ); *King v. Guerra*, 1 S.W.2d 373, 376 (Tex.Civ.App.—San Antonio 1927, writ ref'd).

In ascertaining whether the trial court abused its discretion, the reviewing court must determine if the trial court acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). The trial court is free, however, to consider the entire record of the case up to and including the motions to be considered. *Downer*, 701 S.W.2d at 241. It is also well settled in Texas, that "[i]nferences may be drawn from actual facts proved." *Beazley v.*

*McEver*, 238 S.W. 949, 952 (Tex.Civ.App.—Dallas 1922, no writ). Moreover, the burden is on appellant to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP.P. 50(d).

Unlike the issue presented before this court, everyone recognizes that what was before the trial judge involved the balancing of the plaintiff's need for the testimony in question against the First Amendment claims of the news gatherer that the public's right to know was being impaired. *Carey v. Hume*, 492 F.2d 631, 636 (D.C.Cir.), *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974). *See also Branzburg v. Hayes*, 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (Powell, J., concurring). While the majority concentrates on the importance of a vigorous and unfettered press which I recognize, we must also acknowledge the fundamental rights of an allegedly, falsely accused litigant to be presumed innocent, to be confronted by his accuser, and to obtain judicial compulsion of the accuser's testimony.

The presumption of innocence can be described as one of the most fundamental, if not the most fundamental, principle of our judicial system. While it is generally applicable in a criminal setting, it is nevertheless so ingrained in our general concept of justice that it has otherwise been invoked as recently as the U.S. Senate Confirmation Hearings of Supreme Court Nominee Judge Clarence Thomas. Moreover, harm to an individual's reputation, whether administered through indictment or on the front pages of a newspaper, is nevertheless harm and equally punishing. Further, Supreme Court Justice Anthony Scalia recently recognized the profound importance of the right of confrontation in an analysis which could easily apply to the type of litigation presently before us:

The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the

facts. He can now understand what sort of human being that man is." [Citation omitted.] It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly.

*Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857 (1988).

These fundamental rights of allegedly, falsely accused litigants have a special meaning considering that such litigants are heavily burdened with the obligation of having to not only prove that the publications are false, but also that the publications were made with knowledge of their falsity or with reckless disregard of whether they were false or not. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). In striking a proper balance, caution should be exercised to prevent a result which would only permit the very wealthy to avail themselves of the courts to protect their good name [1], considering that to many, the only thing they possess of value is their good name. Ultimately, the purpose of any trial is to find the truth, which can hardly be accomplished by hiding any part of it.

Nevertheless, I concur with the result as to the order involving Sheriff Falcon, because Falcon's counsel clearly conceded in the record that he "made the decision as an attorney for Sheriff Falcon to wait and find out who the confidential sources [were] when the newspaper disclose[d] it." Therefore, Falcon's counsel admitted that his motion to disclose the confidential sources had not been preceded by any significant efforts on his part, as required by case law.[2] *See Carey,* 492 F.2d at 638; *Mize v. McGraw–Hill, Inc.,* 82 F.R.D. 475, 478 (S.D.Tex.1979).

However, I disagree with the majority's suggestion that Falcon's testimony was all that the trial court had before it to consider when it made its ruling. The trial court

was free to consider the entire record of the case up to, and including, both motions by the plaintiffs, and any inferences which could be drawn from the evidence presented on both motions. *Morrow,* 714 S.W.2d at 298; *Beazley,* 238 S.W. at 952. The trial judge could certainly consider that the publication pertaining to the cocaine conviction of the five year old Garza child was flagrantly false. The trial judge could also consider that had the defendants conducted the most meager confirmation efforts, they would have necessarily discovered that the subject of the false Garza article was only five years old. These factors further justified the consideration by the trial judge of any reasonable inferences which flowed therefrom, which this court is prohibited from second guessing by the abuse of discretion standard which should guide us. This is especially true considering the fact that we were not present to see and hear the witnesses.

I further disagree with the majority's suggestion that depositions of all 48 witnesses listed by the defendants as prospective witnesses should be taken before the court can consider forcing disclosure of the confidential sources. The majority makes this suggestion in spite of the fact that they acknowledge both that the confidential sources are not included in the list and that the discovery of the confidential sources would not be assured by the taking of the 48 depositions. As a matter of fact, oral arguments before this court revealed that even if the depositions of the entire community were taken, the discovery of the confidential sources would not be assured since the sources may be from an entirely different community, they may refuse to admit they are the confidential sources, or they may not know they are the sources the news gatherers relied upon. Thus, even if those deposed admitted being the confidential sources, there is no assurance that they were the sources the news gatherers relied upon. In suggesting such

1. One such factor which could very well preclude a vast number of people from availing themselves of our courts is the requirement that numerous depositions be taken before the court even considers revealing confidential sources.

2. Strangely enough, the majority interprets this to mean that I would not require Falcon to make "even a cursory investigation of the information provided by relator during discovery."

**688**

a requirement, the majority has cast upon all such plaintiffs an unfair onus, which has a potential burden that only the wealthy few could possibly bear.

Although I agree with the majority that the Garza case is different, where the majority would require the doing of a useless thing, I would approve the order of disclosure as far as it pertains to any confidential sources or documents involving the Garza article. While the majority recognizes that the acknowledged falsity of the Garza publication goes a long way towards justifying the disclosure order of the trial court, they would nevertheless require the deposition of defendant David Hanners, the author of the Garza article. I disagree, since the law should not require the doing of a useless thing.

The record reflects that interrogatories requesting the disclosure of the confidential sources were properly propounded to all the defendants, "The Dallas Morning News Company d/b/a The Dallas Morning News ('The News'), A.H. Belo Corporation ('Belo'), *David Hanners*, David McLemore, and Gayle Reaves." All the defendants, including *David Hanners*, responded by refusing to reveal the confidential sources. I can see no useful purpose in requiring the taking of Hanners' deposition when he has already clearly indicated he will not reveal the confidential sources. Although the disclosure order of the court as to Garza was too broad, I would approve that part of the order that pertained to the article involving the Garza child.

In my view, the majority has approached this case more from a sufficiency of the evidence standpoint rather than an abuse of discretion standpoint. The proper function of this court lies not in weighing the evidence which was before the trial court, but in determining whether the appellants have complied with their burden of showing that the trial court "acted without reference to any guiding rule and principles," or "reached a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Morrow,* 714 S.W.2d at 298; *Downer,* 701 S.W.2d at 241–43. As to the relevant part of the Garza

disclosure order, I cannot agree that the appellants have complied with their burden.