**In re UNION PACIFIC RAILROAD COMPANY and Daniel C. Hammack, Jr., Relators.**

No. 14–99–01009–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 20, 1999.

John L. Schouest, Houston, for relator.

Dale Friend, Karen L. Fannin, Houston, for respondents.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

PER CURIAM.

In this original proceeding, relators, Union Pacific Railroad Company and Daniel

C. Hammack, Jr., seek a writ of mandamus directing the trial court to vacate its discovery order dated August 10, 1999. Without hearing oral argument, we conditionally grant the writ. *See* Tex.R.App.P. 52.8(c).

On February 13, 1998, Rebecca Shaw was killed when her car collided with a train owned, maintained and/or operated by relators. On March 5, 1998, Rebecca's husband and the real party in interest, Thomas D. Shaw, filed the underlying tort suit against relators in the 189th District Court of Harris County. The case was set for trial during the two-week period beginning May 21, 1999.[1] On May 19, 1999, Houston television station, KHOU–TV Channel 11 ("Channel 11"), and its reporter, Michael Barnes ("Barnes"), aired a news feature on the facts and circumstances surrounding the accident that is the basis of the underlying suit. The real party, his expert, Joseph S. Hinton, and trial witness, Melissa Gilbert Edmondson, all appeared and spoke on the feature.[2]

On May 21, 1999, relators noticed the deposition of Barnes for May 27, 1999, and served him with a subpoena duces tecum requesting the production of documents related to the news report, including notes and unedited videotapes. On May 28, 1999, relators filed an amended deposition notice changing the deposition date to June 2, 1999. On that date, Channel 11 and Barnes filed a motion to quash the subpoena duces tecum on grounds of a "reporter's" privilege. The following day, relators alternatively filed a motion for leave to re-depose the real party and his expert.[3] The real party did not respond to this motion. On July 2, 1999, relators filed a response to the motion to quash arguing the non-existence of a reporter's privilege. At a hearing held on July 8, 1999, Channel 11 and Barnes agreed to produce unedited video tapes and documents for an *in camera* inspection. On August 10, 1999, the trial court signed an order granting the motion to quash and denying relators' motion for leave. The order is based solely on the court's conclusion that relators "did not meet their burden of proof as delineated in *Channel Two Television Company v. Dickerson*, 725 S.W.2d 470 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding)."

On September 8, 1999, relators filed this petition for writ of mandamus. On September 13, 1999, relators filed an emergency motion to stay the trial proceedings reset for the two week period beginning September 24, 1999. On September 14, 1999, the real party filed a response to the mandamus petition.

■■■ Mandamus relief is available if the trial court abuses its discretion, either in resolving factual issues or in determining legal principles, when there is no other adequate remedy by law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). When alleging that a trial court abused its discretion in its resolution of factual issues, the party must show the trial court could reasonably have reached only one decision. *Id.* at 918. As to the determination of legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 840. Here, relators present an appropriate complaint for mandamus by contending that the court misapplied the law in quashing Barnes deposition based

---

1. The parties acknowledge that on May 13, 1999, the court advised counsel that the case would not be reached during this setting.

2. In 1995, Ms. Edmondson was involved in an automobile-train collision at the same location as Rebecca Shaw's accident.

3. Relators previously took the depositions of Thomas Shaw and Joseph Hinton on January 22, 1999, and April 30, 1999, respectively.

on the privilege recognized in *Channel Two*. Relators also correctly point out that the court's ruling prevents them from making the disallowed discovery a part of the appellate record and thus, deprives them of an adequate remedy by appeal. *See id.* at 843.

In *Channel Two*, the court refused to compel a television station and its reporter to turn over notes and other materials relating to an investigative report aired about a lawsuit between two former business partners. *See* 725 S.W.2d at 471. Citing *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the court stated: "The United States Supreme Court has held that a qualified privilege protects information the press obtains by its investigations." *See* 725 S.W.2d at 471. Finding no such holding in *Branzburg*, the First Court of Appeals in *Dolcefino v. Ray*, 902 S.W.2d 163, 164 (Tex.App.—Houston [1st Dist.] 1995, orig. proceeding [leave denied] ), disavowed its statement in *Channel Two*. The First Court also noted that no reporter's privilege is provided by our state Constitution, statutes or supreme court rules. *See id.* at 164 (citing TEX. R.EVID. 501). The court, however, refused to express an opinion "on the ultimate question of whether such a privilege exists." *See id.*

■ While it did not resolve the privilege issue, the court in *Dolcefino* observed: "the reason for having a reporter's privilege is so informants will know that if they speak to the press, courts will not force the press to disclose their identity." *See id.* at 164–65.[4] In *Dolcefino*, the identity of the reporter's source was known. *See id.* at 165. Because there was no danger that a confidential source's identity would be disclosed, the court found the trial court

did not abuse its discretion in ordering the reporter to answer questions about information given to him by the source. *See id.* Likewise, the underlying suit does not involve a confidential source insofar as the various conversations between Barnes, the real party, and witnesses. Barnes has filed a sworn affidavit that his investigation does not involve confidential sources. Thus, even if a qualified reporter's privilege exists, the trial court clearly abused its discretion in granting Channel 11's and Barnes' motion to quash and denying relators' motion for leave based solely on that privilege. Accordingly, we conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its order of August 10, 1999. The writ will issue if the court fails to comply.

---

4. Case law recognizing a qualified reporter's privilege in civil cases do so only with respect to protecting the identity of *confidential* sources *See In re Selcraig*, 705 F.2d 789, 798–99 (5th Cir.1983); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.1980), *modified on reh'g*, 628 F.2d 932 (1980), *cert denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Dallas Morning News Co. v. Garcia*, 822 S.W.2d 675, 678–79 (Tex.App.—San Antonio, 1991, no writ); *see also U.S. v. Smith*, 135 F.3d 963, 971–72 (5th Cir.1998) (refusing to extend the reporter's privilege applied in *Miller* and *Selcraig* to protect the disclosure of *non-confidential* information in a criminal case).